OF

# PENNSYLVÁNIA.

---

## MIDDLE DISTRICT, MAY TERM, 1848.

### HARRISBURG.

8 13
40SC 6647

## HART *v.* EVANS.

I special damages be claimed for an alleged tort, they must, as a general rule, be set out in the declaration as inducement, or distinct grounds, for superadded damages. But where the damages arise necessarily from the tortious act, it seems that it would not be necessary to set them out: the tortious act being itself the *gravamen* of the action, and the necessarily resulting injuries being only the measure of the damages.

In an action for a private nuisance, for turning the course of an ancient stream, so that it no longer flowed on the lands of the plaintiff, it is an intendment of law, that the plaintiff, by the loss of the water, was thereby injured; and evidence to show that, in consequence thereof, he was compelled to haul water from a distance to supply the uses of the stream, is proper and admissible to give the jury certain *data* upon which they may estimate the real damages, and is not claiming damages for a distinct injury not necessarily resulting from the nuisance.

Evidence, tending to show a hypothetical state of facts as they might have been made to exist, is not admissible.

That which neither justifies, excuses, nor mitigates the tortious acts complained of, is not evidence.

In an action for diverting a stream of water, it is not error in the court to charge, "that the measure of damages is the injury which the plaintiffs actually sustained by reason of the wrongful acts proved to have been committed by the defendants upon the premises, and that the jury will estimate the value according to the evidence."

It is no error in such case for the court to charge, "that the water-course was a permanent advantage to the inheritance; and taking it away was an injury to

B                                                      13

the inheritance, for which an action would lie." In an action for diverting a water-course from the lands of the plaintiff, his possession is sufficiently stated in the declaration, by an averment, that at the time of the commission of the *torts*, he was "*seised in his demesne as of fee:*" seised in law being sufficient, and it is not necessary to state and prove an actual *pedis possessio*, to sustain such action.

The *gist* of the action for diverting a water-course, is the *diversion;* which, in whatever way it is done, is an injury both to the freehold and the possession.

IN error from the District Court of Lancaster county.

*May* 8.   Case for nuisance, by Davis Evans, Hiram Evans, Abraham Bruner and Rebecca his wife, late Rebecca Evans, children and legal representatives of James Evans, deceased, the defendants in error, against Daniel Hart, John Hart, Jacob Hart, and Daniel Hart, jun., the plaintiffs in error.  The action was brought to recover damages for injuries caused by turning off an ancient stream of water from plaintiffs' land.  James Evans, deceased, the father of the plaintiffs, was the son of James Evans, who died in 1801, and who, by his will made on the 18th of March, 1800, devised to his said son the tract of land, now the property of the plaintiffs, and on which the injury caused by the nuisance complained of, was committed by the defendants.  The declaration was thus: —

"For that whereas the said plaintiffs, on the 2d day of April, in the year of our Lord one thousand eight hundred and thirty-two, were, and still are, seised in their demesne as of fee, of and in a certain tract of land, situate and being in the township of Caernarvon, in the county aforesaid, containing one hundred and eight acres, be the same more or less.  And whereas the said plaintiffs, and all others whose estate the said plaintiffs now have in the tract of land aforesaid, have used and had, and ought to use and have, the benefit of a certain stream of water, or ancient water-course, which extended itself in and through divers parts and parcels of the said tract of land: Nevertheless, the aforesaid defendants not being ignorant of the premises, but maliciously contriving and wickedly intending them, the said plaintiffs, of the benefit and advantage of the said stream of water, or ancient water-course, entirely to deprive, the 2d day of April aforesaid, in the year last aforesaid, and at divers other times as well before as after, at the township of Caernarvon aforesaid, in the county aforesaid, the stream and course of water aforesaid, did dam up stop, obstruct, and from the ancient course in which it used to run, did divert or cause to be diverted.  By reason of which said damming, stopping, obstructing, and diverting of the said stream or water-

course, the said plaintiffs have been deprived of the benefit and use of the said water-course or stream of water for a long time, to wit: on divers days and times between the said 2d day of April in the year aforesaid, and the bringing of the writ of the said plaintiffs, by which they now sue, and during all the time aforesaid."

The plaintiffs brought this suit, on the 14th of May, 1833; at which time, Hiram Evans, one of the plaintiffs, was in possession of the land, and worked it on the shares.

James Evans, the elder, by his will, which was given in evidence by the plaintiffs, devised to his son James, the father of the plaintiffs, a tract of land containing 108 acres; to his son John, a tract containing 108 acres; to his son, Caleb, a tract of land, *on which was a saw-mill*, a tract of land in Chester county, and several lots adjoining the tract on which the saw-mill was erected, containing altogether, two hundred and three acres and one hundred and forty perches. The plaintiffs derived their right to the water-course under the following clause of the will of the said testator:—

"I order and direct my son Caleb, when using the water to his mill, is not to let it run in the natural course, but to keep it in the ditch or race, so that it go down as usual to water his brother's meadow, they keeping the race and ditch clean, and in case Caleb clears any meadow-ground below the race, he shall be allowed the use of the water at times to water it, so that they may all of them have use of the water as equally as they can, after it leaves the mill or mills."

The mill referred to in this clause, was the saw-mill. It appeared from the evidence, that this saw-mill was in operation when the said will was made, but how long afterwards, was not shown. It was not, however, in operation in 1807. It also appeared, that there was a *dam in the stream below the saw-mill*, by which the water was turned into the *ditch or race* running to the land or place of Hiram Evans, from 1807 to 1832; that the dam extended across the stream, and was made of stones, earth, and sods; that part of the water of the said stream was turned by the said dam into the said race or ditch, and the rest ran over the dam and down the natural channel; that some part of the water always ran down the natural channel, except when the season was very dry; that the dam was a trifling one, and might be made by a single man in an hour; that the water, which by means of the said dam was turned into the race or ditch running to the land or place of the plaintiffs, always flowed in and upon said land, from 1807 up to

1832; that by the water thus running through the race or ditch, *nine or ten acres of the meadow-land of Hiram Evans*, or of the plaintiffs, was regularly watered; that the water was diverted from running into the race or ditch in April, 1832; that in consequence thereof, there was not so much hay in 1832, as in 1831, *by ten or twelve loads;* that when the meadow was watered by means of the race or ditch it averaged from two to three tons per acre, and that after it was diverted from the race or ditch it did not yield more than a ton per acre; that the race or ditch watered two meadows on Hiram Evans's, or the plaintiffs' place, running round both; that it ran through the barn-yards of Robinson and H. Evans; that there was a place in Evans's barn-yard and also in the field to water the earth or stock; that after the water was turned off in 1832, those places were left and remained dry; that the water when running through the race or ditch was convenient to the house, and being soft water, was used for washing and other purposes; that Caleb Evans owned no meadow below the dam, nor was there any meadow on his place; that the dam across the stream was taken down by the defendants or some of them, on or about the 1st of April, 1832, and as often as it was rebuilt from time to time by the plaintiffs, between that date and the bringing of this suit on the 14th of May, 1833, it was prostrated by the defendants, and the water thereby diverted from the race or ditch through which it had run to water the meadows of the plaintiffs. One witness testified, that he lived with Hiram Evans in 1832; that the water was turned off in the beginning of April of that year; that Evans directed him to build a dam across the old channel to turn the water into the race or ditch again; that he built it accordingly, and that Daniel Hart senior and Daniel Hart junior tore it down, turned the water into the old channel, and said they would tear it down as often as it was rebuilt. Another witness testified, that in 1832 he helped the defendants to stop the water off; that when stopped off it ran down the old channel, and that before it was stopped off, it ran down the race or ditch towards Robinson's; but that the Harts' boys would not allow it so to run. Another witness testified, that the water was stopped entirely off, from 1832 to 1834; that when the dam was rebuilt, it was prostrated in less than an hour afterwards; that when the water was in the race, the stock were watered in the barn-yard and in the field; that when not in the race, the cattle had to be driven and watered at the old channel, about 400 yards off, and the water to wash with, had also to be brought from the same place. James McNally testified, that

he was at work at Hart's quarry, when Mrs. Evans and another woman came there, and wanting water to wash, she put stones and sods together to dam the water so that it would run into the race, and that Daniel Hart removed the same. Eliza Zell testified, that she saw John and Jacob Hart throw stumps, dirt and things into the race leading to Hiram Evans's, and that this was in 1832.

On the trial, the defendants took several bills of exception to the admission and rejection of evidence.

Defendants' *first bill* was to the admission of the deposition of John Zell, an aged and infirm witness. This deposition was not on the paper-book, nor attached thereto.

The defendants, to maintain the issue on their part, called Watson McNally, and offered to prove by him, that he saw the ditch or race before 1833, and saw the water running in it before this suit was brought, and that he never knew of it being cleaned before the suit was brought; and also offered to ask the witness the following questions:—

"State whether it was cleaned afterwards, immediately after the arbitration in 1834, and what was the effect of the cleaning upon the flow of the water; and what depth was cleaned out of the said ditch, and whether it wanted cleaning; and whether, if the ditch had been dug deep enough, it might have afforded water enough to the plaintiff, Hiram Evans, and the other occupier of that farm, without even a dam."

The court rejected the evidence, overruled the offer, and sealed defendant's *second bill of exception.*

The defendants then offered to prove, by the same witness, that he helped Hiram Evans to erect a dam across this stream, in 1834, and the effect of that erection upon the water flowing in the stream, to exclude it from the natural channel, and that he, from observation previously made, had not noticed any such dam; and whether, in the opinion of the witness, a wing-dam, if erected in the stream, would not have been sufficient to turn a proper quantity of water into the race, for the supply of the farm of the plaintiffs, and at the same time to allow water enough to run in the old channel, to supply all that was wanted below.

The court overruled the offer, rejected the evidence, and sealed defendants' *third bill of exception.*

The witness then testified, that he had known the stream of water since he was sixteen years of age; that he never knew there was a dam across it until he helped to put one there; that the stream was

a clever one.   The. defendants then offered to ask him, whether there was sufficient water in the channel after the erection of a wing-dam, to run down the natural channel, and also down the race or ditch?

Offer overruled by the court, and defendants' *fourth bill of exception* sealed.

The witness then proceeded, and stated, that he was thirty-four years of age; did not know the property of the plaintiffs long before 1832, and that he had not taken much notice of the dams along that creek.

The defendants' *fifth·bill of exception*, was to the rejection of the following evidence offered by them: " That Daniel Hart, jun., and Jacob Hart, two of the defendants, were minors in 1832 ; that they were not on the duplicate assessment list delivered to him as assessor, and from information, they were minors."

The defendants' *sixth bill of exception*, was to the admission of evidence that Hiram Evans got the water used, in building the barn on the place, in April or May, 1833, before this suit was brought, from Sensenick's run ; that it was hauled, and that the mortar-bed was quite close to the old race or ditch in which the water used to run.

Each of the parties propounded certain points to the court, which, with the answers of the court thereto, were as·follows :—

*Plaintiffs' Points.*—That in assessing the damages, they have·a right to take into consideration not only the annual profits actually lost by plaintiffs in consequence of the acts of defendants, and interest thereon, but also the loss in value to the land or freehold, and all the costs and charges of every kind to which the defendants have subjected the plaintiffs in attending to and carrying on the suit.

*Answer.*—The measure of damages is the injury which the plaintiffs actually sustained by reason of the wrongful acts proved to have been done by the defendants upon the premises.   The jury will estimate the value according to the evidence.

*Defendants' Points.*—1st. The plaintiffs can only recover by adducing evidence to sustain the allegations contained in their declaration.   They must make out the wrong and the injury as they have laid it; and if they fail in that, they cannot recover.

2d. The evidence being that Hiram Evans was in the exclusive occupation and possession of the land as tenant, and was entitled

to all the hay from the meadow, to which the injury is alleged to have been done, the plaintiffs can only recover for a permanent injury to the inheritance; and in order to do so, they must declare specially, setting forth their seisin, the possession of their tenant, and the particular injury done to the inheritance; and must prove such injury as laid; in all which the plaintiffs have entirely failed, and cannot recover in this action.

3d. To authorize the jury to find against the defendants, a joint act ought to be proved; and the plaintiffs cannot recover for several acts done at several times by the different defendants, and such joint acts ought to be in accordance with the allegations in the declaration.

*Answers.*—1st. The plaintiffs, to recover, must prove all the material allegations contained in their declaration. Proving these, they are entitled to such damages as the jury may consider as a just compensation for the injury they have sustained. Failing to prove them, the verdict should be for the defendants.

2d. The evidence appears to be that Hiram Evans occupied the land on shares, and that the hay was to be fed upon the land. The water-course was a permanent advantage to the inheritance, and the taking of it away was an injury to the inheritance. I think the declaration in this respect is sufficient; and if the jury are satisfied that the injury has been proved as alleged, the plaintiffs are entitled to their verdict.

3d. Answered in the affirmative.

Defendants excepted to the charge, and the answers of court to points. The jury found a verdict for plaintiffs, for $350 damages. The defendants took this writ of error.

Errors assigned. 1. The court erred in admitting the evidence on the part of the plaintiffs set forth in the first and sixth bills of exceptions.

2. The court erred in overruling the evidence on the part of the defendant set forth in the second, third, fourth, and fifth bills of exceptions.

3. The court erred in their answer to the point propounded on the part of the plaintiffs.

4. The court erred in their answer to the several points propounded on the part of the defendants.

5. There is error in the general charge; in charging that it was only in case Caleb Evans should clear any meadow-ground below

the race, that he was to be allowed the use of the water—and in all that part of the charge relating to the construction of the will of James Evans on the water-rights of his three sons, and in charging that Caleb was entitled to the use of the water for the mill whilst he used it, and for no other purpose was he entitled to · the water after it left the mill, unless he .cleared some meadow-ground below the race.

Also in charging that the action may be sustained by proving that the defendants did in fact divert the water from the plaintiffs' meadows, though it was done by removing the dam, which had stood time out of mind across the old channel, for the purpose of turning the stream into the ditch or water-course, conveying the water to those meadows, and not by damming up and obstructing · that water-course.

*Franklin* and *Champneys*, for plaintiffs in error.—Evidence embraced by the second, third, and fourth bills, offered to show that dam was unnecessary. Enough water for both. Injury resulted more from default of plaintiffs in not cleaning race than from act of defendants. Fifth bill.—Two. of defendants were minors under dominion of father. Old Hart was in possession and occupancy of tract on which dam stood. Injury complained of not a trespass. Nothing injurious *per se*, but only in its consequences. If not evidence to justify, it was at least to mitigate damages. Sixth bill.—Offer to prove special damage not set forth in *narr.*: 2 Chit. Pl. 788 and 789; 1 Chit. Pl. 386–7. As to points: All the plaintiffs were reversioners except Hiram Evans. Ought to declare specially. 3 Maule and Selwyn, 234, cited 3 Chit. Pl. 434; Comyn's Dig. *Act. Case, Nuisance* B, *and Precedent;* 2 Chit. Pl. 383; Ripka *v.* Sergeant, 7 Watts & Serg. 9; Ives *v.* Cress, 5 Barr, 118. Answer to second point of defendants is manifestly wrong. Taking away water may be injury to inheritance, but plaintiffs have not so alleged in declaration: but merely the temporary injury ·of deprivation of use of water. Court were wrong in construction put on will. Caleb Evans was entitled to use waste water.

*Stevens* and *Jenkins,* contrà, cited 2 Saund. 113, note 1; Ang. on Water-Courses, 154, 159; 2 Co. Litt. 334–5–6; 2 Ch. Pl. 386; Spigelmoyer *v.* Walter, 3. Watts & Serg. 540; 2 Bl. Com. 209; Roper on Husband and Wife, ·215, 32 Law Lib. 136; Cro. James R. 399; 1 Strange, 229; Cro. Eliz. 96; 1 Ch._Pl. 55; 1 Wend. R. 380.

*May* 29.   COULTER, J.—There is nothing in the first error assigned, so far as it regards the admission of the deposition of John Zell.   In general it is true, that when special damages are claimed for an alleged tort, they ought to be set out in the *narr.*, either as inducement or distinct ground of superadded damages. But where the damages arise necessarily and inevitably from the tortious act, it would seem to be unnecessary: the tortious act being itself the gravamen of the action, and the necessarily resulting injuries being only the measure of the damages.   Thus it has been held that in an action of slander it is sufficient to state and aver that the defendant called the plaintiff a thief, without averring that thereby the character of the plaintiff was injured; because the law implies and intends such injury and damage to follow the act complained of: 1 Saund. 243, b. note 5; 1 Chit. Pl. 385.   But in an action for false imprisonment, evidence that the plaintiff was stinted in his food when confined, or suffered in his health thereby, cannot be received without being specially alleged: because these things did not necessarily result from the illegal confinement: Lowdrich *v.* Goodrich, Peake's N. P. 46; Pitit *v.* Addington, same book, 62.   These cases illustrate the distinction, it being a general rule that in pleading it is not necessary to state that which the law implies.   When the plaintiff complains of an injury resulting from a public nuisance, then he must aver and state the special damage, inasmuch as the law does not presume or imply damage to any particular individual from the public offence.   But for a private nuisance, such as turning the course of an ancient stream, so that it no longer flowed through the grounds of the plaintiff, it is an intendment of the law that the plaintiff was thereby injured by the loss of the water.   And evidence to show that he was thereby compelled to haul water from a distance to supply the uses of the stream, is only giving the jury certain data from which they may estimate the real damage, and is not claiming damages for a distinct injury not necessarily resulting from the nuisance.

The damages resulting from the diversion of the stream by the defendants from the lands of the plaintiffs, were implied by law, and the extent of that damage was the legitimate object and purpose of evidence (2 W. C. C. Rep. 381); and that the plaintiff was compelled to haul water for necessary and unavoidable purposes from a distance, when the stream, if allowed to flow in its ancient channel, would have supplied him at hand, was evidence within the principle.   The residue of the first error assigned is therefore dismissed.

The second error assigned is the rejection of evidence offered by defendant to his second, third, fourth, and fifth bills of exception.

The evidence in the fifth bill could not have been admitted, being of the same character as hearsay evidence, and belonging altogether to that class. The evidence in the second bill was incompetent, because it proposed to show a hypothetical state of facts, on the ground as they might have been made to exist, more than a year after suit brought, by a witness who then examined the ground.

The evidence proposed in the fourth bill was properly rejected, because it could neither justify, excuse, or mitigate, as the will of James Evans gave no authority to any person to divert the water from the grounds of the plaintiff, by either tearing down the old dam which had long caused it to flow there, or by obstructing the race in which it flowed. The court answered correctly to the point proposed by plaintiff's counsel, "that the measure of damages is the injury which the plaintiff actually sustained by reason of the wrongful acts done by the defendants in the premises, and that the jury would estimate this injury according to the evidence."

The court answered the third point proposed by defendants' counsel affirmatively, as they requested; and the first point is answered substantially as they requested. It must have been an oversight, therefore, to assign these answers for error.

The answer to the second point proposed, to wit, that the watercourse was a permanent advantage to the inheritance, and the taking it away was an injury to the owners of the inheritance, for which the suit is instituted, would lie, is not erroneous, but correct.

As to the errors assigned to the general charge, there is nothing in them.

The possession of the plaintiff below is sufficiently set out. The averment is that the plaintiffs were, at the time of the torts committed, "seised in their demesne as of fee." Seisin includes possession. It is true there is also seisin in law, and that would be sufficient to maintain this action; and actual and corporal seisin. But when an individual avers that he was seised, we may take it for granted that he was in possession, as the words will import that state of facts. But I am not to be understood as intimating that it was necessary to state an actual *pedis possessio*, or to prove it, in order to enable the plaintiffs to maintain this action. It was an injury to the freehold as well as to the actual possession. The *gist* of the action, as laid in the *narr.*, is diverting the water-course from its ancient channel; and whether this was done by digging through

the embankment, or throwing mud into the bed of the channel, is of no consequence. There was evidence of both. The construction which the court put on the will of James Evans in relation to the water-rights of the persons claiming under it, was obviously correct: and this I believe notices all the errors assigned.

Judgment affirmed.