## Heise & Mifflin *versus* The Pennsylvania Railroad Company.

1. The Court of Common Pleas has supervisory power over the proceedings of viewers to assess damages against the Pennsylvania Railroad Company; no appeal is given to the Supreme Court, and the judgment of the court below is conclusive except for errors apparent on the record.

2. Depositions and documentary evidence in such cases are not part of the record, and cannot be read in the Supreme Court.

3. There were a number of exceptions to the report of viewers; although the opinion of the court laid great stress on one as being fatal, in legal intendment it may have set aside the report on any of the others.

[Heise *v.* Pennsylvania Railroad Co.]

4. Damages by the Pennsylvania Railroad Company depend on the *appropriation* of property to railroad purposes. This differs from the use of property under a lease for years.

5. A railroad company having title to use and occupy land under a lease, may lay rails upon it and use them as a track, if not forbidden in the lease, or if waste be not committed.

6. In such occupancy under a lease, the rails must be removed before the end of the lease, and no easement is acquired; under an *appropriation*, a perpetual easement takes place.

7. Under a lease, all the compensation a landlord can demand is the rent; under an appropriation, he is entitled to compensation or security.

8. The Act of April 7th 1866 (Limitation of Railroad Suits) has no application to cases where rails are laid, &c., on land held by lease.

9. If the company appropriates the *whole* under its charter, the owners would be entitled to damages, the effect of the lease being to reduce the damages in proportion to the tenant's estate.

10. In appropriating land by a railroad company, some document should be filed to evidence the specific act of appropriation as a guide to the viewers, whose duty is to assess damages, not to decide disputes of title.

11. The Court of Common Pleas may reach questions of title by prescribing rules which will bring the act of the company evidencing the appropriation on the record, and enable the court to send before the viewers the true and only question which they ought to decide.

May 6th 1869. Before THOMPSON, C. J., AGNEW, SHARSWOOD and WILLIAMS, JJ. READ, J., absent.

Error to the Court of Common Pleas of *Lancaster county :* No. 70, to May Term 1869.

On the 25th of August 1867, Samuel B. Heise and John H. Mifflin presented a petition to the court setting out; that they own a piece of land and wharf on the Pennsylvania Canal, in the borough of Columbia, through which a branch of the Harrisburg Railroad passes with two tracks, which railroad and branch have been leased to the Pennsylvania Railroad Company, and that company have located, &c., four additional tracks through the petitioners' property; they prayed for the appointment of viewers to assess the damages sustained by them, &c.

The court thereupon appointed viewers, who reported, October 1867, that having estimated the quantity, quality and value of the land occupied or taken by the said Pennsylvania Railroad Company according to draft, viz.: " a piece of ground in Columbia borough, twenty-five feet wide, along the west side of and adjoining the said Columbia branch double-track railroad; said strip of land commences, &c., and making a just allowance for the advantages, &c., in consequence of the construction of the additional railroad tracks on the west side of the said tracks, and of running of the same through or upon the lands aforesaid, and having made a fair and just comparison of the said advantages and disadvantages, do report: That they find as the value of the ground occupied and appropriated, and before described as being the property of Samuel B. Heise and John Houston Mifflin, and used

[Heise *v.* Pennsylvania Railroad Co.]

for a coal-yard and wharf at the sum of $6336, which is awarded Samuel B. Heise and John Houston Mifflin, as damages," &c.

The company filed the following exceptions to the report:— .

1. The report does not correctly set forth the quantity of land taken or occupied by the railroad company.

2. The Pennsylvania Railroad Company have not occupied or taken a piece of ground of the petitioners 25 feet along the west side of the main tracks and 396 feet in length, as stated in the report of the viewers. A part of said piece of ground, to wit, 300 feet, more or less, is now, and has been for many years, held by the Pennsylvania Railroad Company aforesaid, under divers leases from the petitioners, who receive an annual rent for the same.

3. The sum of $6336, found by the viewers as the value of the ground occupied and appropriated, is excessive.

Depositions were taken showing on the part of the company, that there were such leases as referred to in the exceptions, and on the part of the petitioners that the leases were given in evidence before the viewers.

The Court of Common Pleas set aside the report on the following opinion:—

" The first question presented by the exceptions is whether the defendants, being lessees of the premises, are liable to the proceedings which the plaintiffs have instituted against them during the continuance of their lease?

" It would seem, if the lease gave them privilege thus to occupy the ground, they have violated no right of others, and the lessor more especially could not complain. It is alleged and shown that much the greater part of this ground has been held by the defendants many years under leases from the plaintiffs, who have received an annual rent for the same. This fact was placed before the viewers for their consideration, and the objection which is made the subject of this exception was pressed before them. The lease not extending to the whole ground on which the defendants have laid their additional rails, it is supposed and argued that although the petitioners might not have had a right to proceed in their claim for damages had the leases covered the whole premises, yet as a part of the ground was entitled to have damages awarded for any injury the defendants may have caused, this will warrant the petitioners to have and demand damages for the whole, as well that which the defendants hold under lease, as the rest which is not so held by them. We cannot perceive how this petition can be maintained. Present damages are the foundation of the complaint; the law contemplates as an element of the complaint, the effect of the improvement or work on the present value of the property compared with that which it bore previously to the work

[Heise *v.* Pennsylvania Railroad Co.]

commenced, the difference in value before and immediately after it was finished being the true measure of damages.

"If the party owning it should put it up for sale, what price would it sell for, is the question. But he cannot offer it for sale, except with the encumbrance of the lease.

"The lessees have the right to lay their rails on the property they have rented from the petitioners, therefore no damages can be awarded for *that*—there being no injury done; and this being so, if they have laid their rails upon land also, which their leases do not cover, this, which might be an injury and a proper ground of complaint and of claim for damages, would not change or affect the right as to the leased premises.

"We are inclined to think, then that as to the leased premises, the defendants are exempt from such a claim during the continuance of the lease referred to, though the petitioner had a right to claim damages for the land not comprised in the leases.

"But the viewers estimate the value of the damages for the whole land, and without respect to the leases of the greater part held by the defendants. This we conceive was wrong; and we think the report should, on this exception, be set aside.

"In regard to the exception on the ground of excess of damages, as it is unnecessary to discuss it we merely suggest that viewers can have no better guide in an investigation in which certainty may be unattainable, than that which is given by the Supreme Court, viz.: the difference in value of the property through which the improvement passes immediately before the work was commenced and immediately after it was finished and in operation. We might also suggest, looking at the matter as exhibited by the draft, and in connection with the testimony of the numerous witnesses examined upon this point, that the viewers, in pursuing their investigation even with respect to the whole premises in question, should have considered not only that the defendants held this ground (the greater part of it) under leases from the petitioners, or Samuel B. Heise, but that their railroad passed along parallel with these rails—a permanent work—then, that the petitioners had considerable ground left between this strip which the defendants had occupied, for the additional rails, and the basin or canal with their access to the latter as before, having only to cross additional lines of rails, and that the ground actually taken was a strip of but twenty-five feet wide, the petitioners still owning to the river land.

"We are of opinion that the report of viewers should be set aside, and another view be ordered."

The petitioners took out a writ of error, which was quashed at May Term 1869.

The record having been remitted, they removed the proceed-

ings to the Supreme Court by certiorari, No. 64, to May Term 1870, and assigned for error that the court erred:

1. In setting aside the report.

2. In deciding that the plaintiffs, by reason of a part of their property being under a lease to expire in 1878, were prevented from having an assessment made by viewers, of all the damages caused to the petitioner's property as a whole, by the making of a railroad upon it.

3. In setting aside the report on the defendant's second exception.

The certiorari was argued May 6th 1870, before THOMPSON, C. J., AGNEW, SHARSWOOD and WILLIAMS, JJ. READ, J., being absent.

*H. M. North,* for certiorari.—The railroad was not made by the company as lessee, but under their corporate privileges; the right of way which they acquire may be as permanent as the land: Reese v. Addams, 16 S. & R. 42. The conveyance of the land would not pass compensation for damages previously accrued: Zimmerman v. Union Canal Co., 1 W. & S. 354. The petitioners were compelled to proceed before the end of their lease: Act of April 7 1866, § 2, Pamph. L. 106, Purd. 1442, pl. 2. The present interests, and those in remainder, should be assessed at the same time: Railroad v. Boyer, 1 Harris 500; Biddle v. Hussman, 23 Miss. R. 597; Phila., W. & Balt. R. R. v. Williams, 4 P. F. Smith 108; Mifflin v. Railroad, 4 Harris 182; Snyder v. Penna. R. R., 5 P. F. Smith 340.

*G. F. Breneman,* contra.—The proceedings of the court below are not reviewable except for errors apparent on the record: Penna. R. R. v. Lutheran Congregation, 3 P. F. Smith 445; Same v. Bruner, 5 Id. 318.

The opinion of the court was delivered, May 12th 1870, by

AGNEW, J.—In the case of The Pennsylvania Railroad Company v. Lutheran Congregation, 3 P. F. Smith 445, we have said that under the charter of this company, the Court of Common Pleas holds a supervisory power over the proceedings before the viewers, to see that they are regular and not contrary to law; and no appeal being given to this court, the judgment of the Common Pleas is final and conclusive, except for irregularities manifest upon the face of the record. We cannot therefore read the depositions and documentary evidence which constitute no part of the record, or examine into the merits. In setting aside the report, the court below did not confine itself to any particular exception, though it would seem from the opinion of the judge, he laid great stress on

[Heise *v.* Pennsylvania Railroad Co.]

the fact that the railroad company held a part of the ground under a lease.

But the record proper does not show that he set aside the report solely on the second exception. In legal intendment he may have set it aside on the ground of excessive damages, and indeed the opinion, if referred to, shows that he thought the viewers erred as to the damages.

The court having ordered a new view, the petitioners are not without remedy, and we cannot say that there is error apparent in the record proper. But as this case will go before another jury of view, it is proper that we should state our opinion on the question chiefly discussed before us, as to the effect of the lease.

Owing to the defective legislation, for such we must call it, in relation of the mode of proceeding to exercise the state's power of eminent domain by this company, it is difficult to determine the rights of the parties. The law makes no provision for a record of the act of the company in taking property, either by filing a draft, or an instrument of appropriation defining with precision the extent, boundaries, location and purpose of the property taken. The entry is in *pais*, and the surveys appear to be in the keeping of the company only. In the present case, the only draft is one presented to the viewers and returned with their report, and it exhibits with no precision the defined boundaries of the land taken. The viewers say the draft was furnished by the company. From this draft it would seem to be impossible to determine whether the company intended to exercise the power of the state in taking the whole number of feet (three hundred and ninety-six), or only that part not held under lease, to wit, ninety-six feet; yet this is essential to be known. The question of damages depends on the taking, that is the say the *appropriation* of the property to railroad purposes. This is a very different thing from a mere use of the property under a lease of years. There is nothing to prevent a railroad company having title to the use and occupancy of land under a lease, from laying down rails upon it and using them as a track for their engines, cars, &c., if not forbidden in the lease, or if waste is not committed by such acts as evidently injure and destroy the soil. But an *appropriation* of the property for the uses of a railroad under the power granted to take it for such a purpose, is essentially different from such a mere use during the term of a lease. In the latter case no title is acquired to the easement, and the rails must come up before the expiration of the lease; but in the former a perpetual easement or right of way takes place. In one case, the rent is all the compensation which the landlord can demand; in the other, the owner is entitled to compensation or security for it before his right of property can be invaded. It was all important therefore that the court should know by the act of the company itself, whether it

[Heise *v.* Pennsylvania Railroad Co.]

was proceeding to condemn the whole land under its power of appropriation, or was merely exercising its rights as a tenant upon the leased part. As to the latter, the company proceeded at its own peril, subject to the terms of its lease, and it was not the subject of an assessment of damages. Being bound to remove the rails before the termination of the lease, the Limitation Act of April 1866, Pamph. L. 106, has no application to the case. But if this company had proceeded to appropriate the whole three hundred and ninety-six feet under its charter, the owners would clearly be entitled to damages, the only effect of the lease being to reduce the damages in proportion to the tenant's estate in the premises, for which the landlord is compensated in the rent.

This statement of the relative rights of the parties, shows the necessity of some instrument or document to be filed of record to evidence the specific act of appropriation by the company. This is necessary as a guide to the viewers. Their duty is to determine a question of damages, and not to decide disputes of title between the applicants and the company. Hence a claim of title, whether under a lease or otherwise on part of the company, should be referred to the court, and not to the viewers. In the absence of legislation, we see no way in which a court can reach questions of this kind, and prevent them from being used before the viewers improperly or decided by them under the veil of a general report, unless by prescribing rules, or making an order under the general powers conferred by law on the court, which will bring the act of the company evidencing its appropriation into the record, and enable the court to send before the viewers the true and only questions they ought to decide. The court having ordered a new view, has it in its power to make the necessary order to enable the subject of appropriation to be definitely defined, and to submit the question of damages properly to the next board of viewers.

The order of the court below in setting aside the report, and directing another view, is therefore affirmed, and a *procedendo* awarded.