## Dimmick *et al. versus* Brodhead.

1. A railroad company tendered a bond with sureties to a land-owner who refused it; before approval of the bond, the officers, contractor, &c., entered his land; the bond was afterwards approved. *Held*, that trespass would lie against the parties entering.

2. The amended Constitution of 1838, art. 7, sect. 4, Railroad Laws of February 19th 1849, sect. 10, and April 9th 1856, sect. 2, construed together.

3. Harrisburg *v.* Crangle, 3 W. & S. 460; McClinton *v.* Pittsburg, F. W. & C. Railway, 16 P. F. Smith 404, recognised.

March 16th 1874.    Before AGNEW, C. J., SHARSWOOD, MERCUR and GORDON, JJ.    WILLIAMS, J., at Nisi Prius.

Error to the Court of Common Pleas of *Pike county :* No. 300, to January Term 1873.

This was an action of trespass q. c. f. brought November 13th 1871, by William Brodhead against Jacob H. Dimmick and others.

Dimmick was the President of the Milford and Matamoras Railroad Company, which was incorporated by Act of April 1st 1870, and made subject to the provisions of the General Railroad Law of February 19th 1849.

The other defendants were the contractor and workmen employed by the company to construct the road.    On the 9th of November

[Dimmick v. Brodhead.]

1871, the company with sureties entered into a bond to William Brodhead conditioned for the damage he might sustain from the location and construction of the road through his land; this bond was tendered to Brodhead on the same day and was refused by him; the defendants upon the 13th of November entered upon Brodhead's land for the purpose of constructing the road, and committed the trespass complained of. The bond was approved by the Court of Common Pleas December 22d 1871.

The amended Constitution of 1838, article 7, sect. 4, declares that no corporation shall be invested with power to take private property for public use without requiring it "to make compensation to the owners of said property, or give adequate security therefor before such property shall be taken." The Railroad Law of 1849, sect. 10, Pamph. L. 83, 1 Br. Purd. 1218, provides that before a railroad company shall enter, &c., "they shall make ample compensation to the owner, &c., or tender adequate security therefor."

The Act of April 9th 1856, sect. 2, (Pamph. L. 288, 2 Br. Purd. 1220, pl. 36), provides that if the parties cannot agree upon the amount of damages, the company shall tender a bond with at least two sureties to the party claiming damages, but if the party refuse to accept the bond as tendered, the company, upon due notice, may present the bond to the Court of Common Pleas, "and if the bond and sureties are approved, the bond shall be filed in said court for the benefit of those interested."

On the trial February 21st 1873, before Dreher, P. J., the plaintiff gave evidence of the trespass as above stated, and of the amount of damage sustained by him. The defendants offered the bond mentioned above; it was objected to by the plaintiff, rejected by the court and a bill of exceptions sealed.

A number of points were submitted by the defendants; the main question raised and the one decided by the Supreme Court was whether the defendants could enter upon plaintiff's land for the purpose of constructing the road upon the tender and refusal of the bond, before its approval, although it may have been afterwards approved.

The court charged:—

* * * "The defendants contend that as they were employees of the Milford and Matamoras Railroad Company, and entered upon the plaintiff's land for the purpose of constructing the railroad of said company, the plaintiff cannot maintain the common-law action of trespass for any damage done by them to his land, but that he is confined to the statutory remedy given him by the General Railroad Law.

"The company, at the time of the entry of defendants upon the plaitiff's land, had tendered to plaintiff a bond as required by law, but as the plaintiff refused to accept the bond, neither the company

[Dimmick *v.* Brodhead.]

nor their employees had any right to commence work on plaintiff's land until the bond was approved by the Court of Common Pleas of Pike county. This bond was approved by the court, but not until after the work was done. We therefore charge you that the entry of defendants upon the land of the plaintiff was wrongful, and that the plaintiff is entitled to recover in this suit for whatever damages he suffered from the acts of the defendants injurious to his land down to the time of bringing this suit." * * *

The verdict was for the plaintiff for $272.66.

The defendants took a writ of error, and amongst other things assigned the charge for error.

*F. M. Crane* (with whom were *D. M. Vanauken* and *J. Nyce*), for plaintiffs in error.—After tender of security, the company had the right to enter upon the land: Harrisburg Water Co. *v.* Crangle, 3 W. & S. 460; Western Penn'a R. R. *v.* Johnson, 9 P. F. Smith 295. The remedy is not by trespass, but damages must be assessed in the manner prescribed by Act of 1849: Cumb. Valley Railroad *v.* McLanahan, 9 P. F. Smith 23; McKinney *v.* Mon. Nav. Co., 2 Harris 65; Farnham *v.* Del. & Hudson Canal Co., 11 P. F. Smith 265; Fehr *v.* Sch. Nav. Co., 19 Id. 161.

*G. G. Waller* (with whom was *C. W. Bull*), for defendant in error.—The bond must be approved before entering on the land: Wadhams *v.* Lackawanna & B. R. R., 6 Wright 303; Yost's Report, 5 Harris 531. Trespass will lie in this case: Brown *v.* Powell, 1 Casey 229; Harrisburg *v.* Crangle, 3 W. & S. 460; McClinton *v.* Pittsburg, F. W. & C. Railway, 16 P. F. Smith 404.

The opinion of the court was delivered, March 23d 1874, by

AGNEW, C. J.—It has been settled in a series of cases from Harrisburg *v.* Crangle, 3 W. & S. 460, to McClinton *v.* Pittsburg, Fort Wayne and Chicago R. R. Co., 16 P. F. Smith 404, that it is trespass in a private corporation to take land for a public use without first making compensation, or giving adequate security therefor. The constitutional provision is express that this must be done "before such property shall be taken." This amendment of 1838 meant something. The 10th section of the Bill of Rights in the Constitution of 1790, merely provided that property should not be taken or applied to public use "without just compensation being made." Under this clause it had been held that it was not necessary that the compensation should be actually ascertained and paid before appropriation, it being sufficient if an adequate remedy was provided as the means of obtaining it without unreasonable delay. But the remedy is illusory in the case of a private corporation, where it is without means, or becomes insolvent, and hence the provision in the 4th section of the seventh article of the Con-

[Dimmick *v.* Brodhead.]

stitution as amended in 1838, viz.: " The legislature shall not invest any corporate body or individual with the privilege of taking private property for public use, without requiring such corporation or individual to make compensation to the owners of said property or give adequate security therefor, before such property shall be taken." The language is not shall *tender*, but shall give adequate security. The word " tender," in the proviso of the 10th section of the General Railroad Law of 1849, is a departure from the words of the Constitution. If the adequacy of the security be left in the first instance to the determination of the corporation, the effect of a tender merely might be ruinous to the property-owner. An entry and destruction of valuable property by a corporation, would be without compensation at the end of a contest about the adequacy of the security, if then the security should be found to be insufficient and the corporation insolvent. The legislature therefore remedied this defect in the Act of 1849, by the 2d section of the Act 9th April 1856 (2 Brightly 1220, pl. 36), providing in case of the refusal of the owner to accept the tender, that notice of presenting the bond for filing in court should be given, and making the bond subject to the approval of the Common Pleas. Less than this is no sufficient provision for compensation under the amendment of 1838, and would leave the people unprotected in their possessions. The people in their amendment have expressed their determination to secure themselves fully against the wrong and grasping avarice of those who exercise the power of eminent domain, often more for their own interests, than those of the public. It was different where the state herself exercised her own power. She could proceed at once upon making a sufficient provision for compensation. Her ability to compensate in the end is undoubted. The entry in this case before the approval of the bond was a trespass, and as such the common-law remedy is applicable: Harrisburg *v.* Crangle, 3 W. & S. 460; McClinton *v.* R. R. Co., 16 P. F. Smith 404.

Judgment affirmed.