# WILLIAMSPORT ETC. R. CO. v. PHILA. ETC. R. CO.

**APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF LYCOMING COUNTY.**

Argued March 18, 1891—Decided April 6, 1891.

[To be reported.]

| | |
|---|---|
| 141 | 407 |
| 166 | 174 |
| 141 | 407 |
| 173 | 137 |
| 141 | 407 |
| 175 | 558 |
| 141 | 407 |
| 184 | 151 |
| 141 | 407 |
| 190 | 96 |
| 141 | 407 |
| 22 SC | ¹511 |
| 141 | 407 |
| 32 SC | ²457 |

1. In the taking of land for the construction of a railroad, the appropriation, as against the landowner, is valid and effective when compensation for the taking and the injury thereby is made or secured: Levering v. Railroad Co., 8 W. & S. 459; McClinton v. Railway Co., 66 Pa. 404; Dimmick v. Brodhead, 75 Pa. 464; Gilmore v. Railroad Co., 104 Pa. 275; Buffalo etc. R. Co. v. Harvey, 107 Pa. 319.

2. But, as against a rival corporation, the act of locating a route for a railroad is the appropriation of the land covered by the line to the purposes of the construction and operation of the railroad, by virtue of the power of eminent domain; and there can be no appropriation prior to the location of such line.

Statement of Facts.

3. The making of a location, so as to give title to one railroad company as against another, however, involves some corporate action on the part of the company establishing and adopting some definite route: an engineer alone, by surveying and marking a line, cannot make a location and effect a valid appropriation of the land.

4. Wherefore, when the chief engineer of a railroad company surveyed and staked out the centre line of a proposed railroad, and returned a map thereof to the office of the company, but no action was taken by the board of directors adopting the location, the act of the engineer conferred no title as against a rival corporation.

5. In such case, in the absence of a location of its right of way by corporate action, a railroad company has no standing to ask for an injunction restraining another company from proceeding regularly to appropriate land for its roadway, even though the land in question may be owned by the plaintiff company.

6. When, in a bill in equity praying for such an injunction, the defendant answered denying that the plaintiff had " ever made a valid and legal location of the line of its railroad " upon the land in question, such denial distinctly raised the question whether the location of plaintiff's line was made and adopted by corporate action.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, MC-COLLUM and MITCHELL, JJ.

No. 356 January Term 1891, Sup. Ct.; court below, No. 1 June Term 1890, C. P. in Equity.

On March 7, 1890, the Williamsport & North Branch Railroad Company filed a bill in equity against the Philadelphia & Erie Railroad Company, averring in substance as follows:

That the plaintiff company, in pursuance of powers and privileges conferred upon it by its charter, was extending its railroad from its present terminus at Hall's station, to points on or in connection with the Philadelphia & Erie Railroad, and in so doing had made a proper and lawful location of its roadway over certain described property of John Metzger in the city of Williamsport, by a survey and staking out of the centre line thereof, which location was made, in point of time, anterior to the location on said property of the line of any other railroad; that by a written contract, made January 28, 1890, said Metzger agreed to sell said property to the plaintiff for $12,000, and the same was necessary to the plaintiff for its use in the proper construction and operation of its railroad; that the defendant company, without right or authority of law, intended to construct

Statement of Facts.

a branch line of railroad over and upon the property aforesaid, which would cause irreparable damage to the plaintiff; that the defendant had tendered a bond to said John Metzger, as security for any damages arising from the location and construction of such intended railroad of the defendant upon said land, such tender had been refused, and the defendant was about to present said bond to the Court of Common Pleas of Lycoming county for approval; praying for an injunction restraining the defendant company from presenting said bond for the approval of the court; from locating, constructing and maintaining said branch railroad upon the land aforesaid, and from interfering with the construction, operation and maintenance by the plaintiff of its railroad, works, stations, etc., thereon. Upon the filing of the bill, the court granted a preliminary injunction; and, after a hearing upon affidavits, the injunction was continued until further order: Williamsport etc. R. Co. v. Railroad Co., 8 Pa. C. C. R. 10.

Subsequently, the defendant filed an answer, which, neither admitting nor denying that the plaintiff was extending its line from Hall's station to a point on or in connection with the defendant's railroad, averred that the plaintiff had done no work upon the ground beyond Hall's station, and that it was not constructing its line upon the alleged location mentioned in the bill; denied that the plaintiff ever had made a valid and legal location of the line of its railroad upon the lot of John Metzger, or that there was anything upon said lot showing the said location; averred that the defendant had made a location of the line of its railroad upon said Metzger, and was proceeding in a lawful and regular manner to condemn the land therefor when prevented by the injunction granted in this case; denied that the whole of said lot was needed for the railroad of the plaintiff, or that the construction of the defendant's road thereon would produce irreparable damage to the plaintiff, and averred that both railroads could be constructed and operated on said lot without interfering with each other.

Issue being joined, the cause was referred to *Mr. J. A. Beeber*, as examiner and master. The only evidence before the master respecting the making of a location by the plaintiff of a line of railroad upon the Metzger property, was testimony tending to show that on November 26, 1886, William A. Mason, the

Statement of Facts.

plaintiff's chief engineer, surveyed and staked out a centre line thereon; that on November 12, 1889, he ran the same line again, and staked out a centre line; that he had made a map of the survey of 1886, and a map and profile of the survey of 1889, which were returned by him to the office of the company and were thereafter kept there. One of the plaintiff's witnesses said that he thought there was some difference between the two surveys, in the location of the centre line. B. G. Welch, the general manager of the plaintiff company, testified that he was present, upon the ground, when each of those surveys was made, and that they were made "under the instructions of the company."

The defendant put in evidence a resolution of its board of directors, dated October 28, 1889, adopting as the location of a branch line of its railroad, running upon and across the Metzger lot, a survey recited to have been previously made and marked upon the ground by its engineers. Robert Neilson, the defendant's general superintendent, testified on cross-examination as follows: " Q. When did your company, if you know, locate a line by survey and staking the centre line over the land of John Metzger? A. I am not prepared to answer that question on account of my absence. Q. To your knowledge, has your company ever located a line by staking out a centre line over the land of John Metzger? A. Not by driving stakes on the land of John Metzger, but they have made a survey across it. The land of John Metzger is so narrow that it really does not require stakes."

The master's report was filed November 25, 1890. Upon the question of location, the master found, in substance, that the plaintiff company, having lawful authority to build an extension of its road from Hall's station to a connection with the plaintiff's road, had located the line of such an extension by survey and staking out the centre line thereof, first on November 26, 1886, and again on November 12, 1889, and had expended in such works and the purchase of rights of way about $10,000; and that said locations were made upon the land of John Metzger prior, in point of time, to the location of the line of any other railroad on said land, or the attempt by the defendant to condemn part of the said land. He reported also, inter alia, that the plaintiff company intended to locate on

Opinion of Court below.

said lot buildings and appliances to furnish terminal facilities for the handling of its traffic, that the whole lot would be required therefor, and both railroads could not be constructed thereon; and that the defendant could construct a track in such a way as to operate its branch road successfully, without going upon any portion of the land of Metzger. The master, therefore,—citing and considering: Pittsburgh etc. Ry. Co. v. Commonwealth, 101 Pa. 192; Titusville etc. R. Co. v. Railroad Co., 12 Phila. 642; Davis v. Railroad Co., 114 Pa. 312; Penna. R. Co.'s App., 93 Pa. 159; Lewis v. Railroad Co., 16 Phila. 621; Pittsburgh etc. R. Co.'s App., 122 Pa. 511; Sharon Ry. Co.'s App., 122 Pa. 544; Groff's App., 128 Pa. 635; Cleveland etc. R. Co. v. Speer, 56 Pa. 335; Phila. etc. R. Co. v. Williams, 54 Pa. 107; and distinguishing: Neal v. Railroad Co., 2 Gr. 138; West. Penn. R. Co.'s App., 99 Pa. 155; West River Br. Co. v. Dix, 6 How. 507; Richmond etc. R. Co. v. Railroad Co., 13 How. 83,—recommended a decree according to the prayer of the bill.

Exceptions to the master's report were filed by the defendant, specifying, inter alia, that the master erred:

3. In reporting that the plaintiff had taken and appropriated for railroad purposes any part of the lot of John Metzger.[3]

5. In not reporting that there was no evidence whatever that the board of directors of the plaintiff company had directed or authorized the construction of a railroad over the lot of John Metzger.[5]

7. In not reporting that the evidence showed that no line of railroad had been located upon the ground from Hall's Station to Williamsport, and no work whatever had been done between those points.[7]

12. In recommending a decree according to the prayer of the bill.[12]

The exceptions having been overruled by the master and afterwards renewed before the court, after argument thereof the court, METZGER, P. J., on February 6, 1891, filed an opinion in part as follows:

In the light of the facts proven in this case, the conclusions of law found by the master are sustained. We had occasion to discuss some of the questions of law arising in this case,

Opinion of Court below.

when we filed our opinion giving our reasons for continuing the injunction in this case; and what we then said, together with the carefully prepared and well-considered opinion of the master, we deem sufficient to sustain the right of the plaintiff to the decree recommended by the master.

It is now urged by the defendant that there is no evidence that the directors of the plaintiff ever authorized the location of this road. It might be sufficient answer to this allegation to say that there was no such issue raised by the pleadings in this case. It is asserted in the second paragraph of plaintiff's bill that the Williamsport & North Branch Railroad Company "is extending its line of railroad from its present terminus, at or near Hall's Station, in said county, to points on or in connection with the said Philadelphia & Erie railroad." And this allegation is not denied by the answer. But we have the positive testimony of B. G. Welch, the general manager of the plaintiff, that the survey was made under the instructions of the company; also, the testimony of W. A. Mason, the civil engineer who made the surveys for the company, who testifies he made maps of the locations run in 1886 and in 1889, and that these maps were left and now are in the office of the plaintiff.

It is also claimed that the plaintiff has abandoned its road and that more than a reasonable time has elapsed since its location, and that no present purpose of the company to go forward in the construction of its road has been shown, and, therefore, its location is valueless. The point as to the abandonment of the road would be well taken, if the company relied on its survey in 1886, but the final survey and location of the road was not made until November 12, 1889, and shortly thereafter this litigation commenced. The uncertainty of the final result of legal or equitable proceedings, where the determination of an issue, as in this case, largely depends upon the facts proven, must be conceded. Pending these proceedings, it could scarcely be expected that the plaintiff should have gone forward with the construction of its road, which necessarily would have caused a large expenditure of money.

From all the evidence before us, in this case, we cannot say that it is not the present purpose of the plaintiff to construct its railroad as soon as it can be done, under the circumstances.

We, therefore, sustain the report of the master, and dismiss the exceptions filed to his report, and make the following order and decree: . . . .

—A decree having been entered dismissing all the exceptions to the master's report; granting a perpetual injunction in accordance with the prayer of the plaintiff's bill, and directing that the costs of the proceeding be paid by the defendant, [13] the defendant took this appeal, specifying inter alia that the court erred:

3, 5. In dismissing the defendant's exceptions.[3] [5]

7, 12. In dismissing the defendant's exceptions.[7] [12]

13. In entering the final decree.[13]

*Mr. Henry C. Parsons* and *Mr. Wayne MacVeagh*, for the appellant:

By §10, act of February 19, 1849, P. L. 83, the power to locate the line of a railroad is vested in the president and board of directors of the corporation. Moreover, the statute under which the plaintiff, as the successor of the Muncy Creek Railway Company, claims the power to build a line of railroad from Hall's Station to Williamsport, specifies the authority which it confers in these words: " They may also connect with the Philadelphia & Erie railroad at such points as they may think best:" act of April 17, 1866, P. L. (1869) 1302. It seems, then, too clear for argument, that some corporate action was absolutely necessary before the plaintiff could locate its road. Nothing of the kind was pretended in this case.

*Mr. C. La Rue Munson* (with him *Mr. Addison Candor*), for the appellee:

It is expressly provided in § 10, act of February 19, 1849, P. L. 83, that engineers, superintendents, etc., may make the location of the route of a railroad; and, in this case, both the chief engineer and the general manager of the plaintiff company testified that the surveys and locations in 1886 and 1889 were made for the plaintiff and under its instructions, and that the maps and profiles are on file in its office. There is no statute or decision in Pennsylvania requiring more than that, to render a location effective. No provision is made by law for any record of the act of the company in making the appropriation: Heise v.

Railroad Co., 62 Pa. 72. As suggested by the court below, the issue as to whether this location was made by "the president and directors" is not raised by the pleadings. But there is no testimony that the defendant ever located its road by survey and staking out a centre line, and without that action it has no standing in this case: O'Hara v. Railroad Co., 25 Pa. 448; Pittsburgh etc. Ry. Co. v. Commonwealth, 101 Pa. 192; Titusville etc. R. Co. v. Railroad Co., 12 Phila. 642; Davis v. Railway Co., 114 Pa. 312.

OPINION, Mr. JUSTICE WILLIAMS:

The important question presented by this appeal is, what constitutes a valid location, on the ground, of a projected line of railroad? It is singular that such a question should be to any extent an open one in a state remarkable as Pennsylvania is for the number and extent of its railroads. The act of location is an appropriation of private property, by virtue of the right of eminent domain with which the state has invested the railroad company, either by the act of incorporation or by virtue of general laws. The requisites of a valid location may be considered, first, with reference to the private owners upon or over whose lands the location is made; and, next, with reference to third parties and other corporations.

The successive steps contemplated by the act of 1849 and subsequent legislation, as necessary to vest a title to the roadway in the corporation, are these:

1. A preliminary entry on the lands of private owners for the purpose of exploration. This is made by engineers and surveyors, who run and mark one or more experimental lines, and who report their work, with such maps and profiles as may be necessary to present it properly to the company that employs them.

2. A selection and adoption of a line, or one of the lines so run, as and for the location of the proposed railroad. This is done by the corporation, and it requires the action in some form of the board of directors. This makes what was before experimental and open, a fixed and definite location. It fastens a servitude upon the property affected thereby, and so takes from the owner and appropriates to the use of the corporation.

3. Payment to the owner for what is taken and the conse-

quences of the taking, or security that it shall be made when the amount due him is legally ascertained.

The title of the owner is not divested until the last of these steps has been taken : Levering v. Railroad Co., 8 W. & S. 459; McClinton v. Railway Co., 66 Pa. 404; Dimmick v. Brodhead, 75 Pa. 464 ; Buffalo etc. R. Co. v. Harvey, 107 Pa. 319 ; Gilmore v. Railroad Co., 104 Pa. 275.   As against him, the corporation can acquire only a conditional title by its act of location, which ripens into an absolute one upon making compensation.

As to third persons and rival corporations, however, the action of the company adopting a definite location is enough to give title.   For this reason, in several of the United States provision is made by law for recording the action of the company and the line adopted by it, so as to give notice to the public, and to settle questions of priority of title.   We have no such statute, and the action of the company must be proved by other competent evidence : Heise v. Railroad Co., 62 Pa. 72.   But, when proved, it has the same effect upon all interested as though it had been recorded.   It settles the date of actual appropriation, and shows the exact location of the line of the road proposed.   An examination of our own cases will show that the conclusions we have reached are fairly deducible from them.   In N. Y. etc. R. Co. v. Young, 33 Pa. 175, it was held that the location of the line of its road is intrusted by the law to the company alone ; and after it has exercised the discretionary power confided to it, its action is final as to third persons, and cannot be reviewed.   The same doctrine was again asserted in Cleveland etc. R. Co. v. Speer, 56 Pa. 325, and it has been adopted in many subsequent cases.   The effect of a location, when made, so far as the line and the ground covered by it are concerned, was considered in Pittsb. etc. Ry. Co. v. Commonwealth, 101 Pa. 192 ; and it was held the act of the company in adopting a definite and permanent location for its road was an appropriation of the ground covered by it, whether such ground was within the enclosure of a private owner, or in the public highway.   In other words, this is the method by which the corporation exercises the power of eminent domain with which the state invested it at its creation, and takes what before belonged to others for its corporate use.   It may acquire

land by purchase, if its charter authorizes it to do so, before a location of its road; but, if it does so, it holds the land as any other purchaser would, subject to the right of any one having the right to do so to enter and appropriate it by virtue of the right of eminent domain.

That a corporation cannot exercise the power to appropriate land until it has located its line, is well settled. Thus, if a company has an option between two or more lines or routes, it must make its election by an actual adoption of one of them before it can acquire title by appropriation upon either: 1 Redf. on Railways, 240. The reason for this is, that the act of location is at the same time the act of appropriation. The space covered by the line as located is thereby seized and appropriated to the purposes of the construction and operation of the railroad by virtue of the power of eminent domain, and nothing remains to be done except to compensate the owner. After the act of location by the company, the owner or the company may proceed at once to secure an ascertainment of damages. Until such act neither can do so; for no right to damages vests in or accrues to the owner until there has been an appropriation of his property by the corporation: Davis v. Railway Co., 114 Pa. 308. There should be no unnecessary delay in completing the preliminary exploration and making a location, if priority is to be secured. In New Brighton etc. R. Co.'s App., 105 Pa. 13, private parties, in contemplation of securing a charter, caused a preliminary survey to be made over a route for a railroad projected by them. They afterwards secured a charter, and the corporation adopted the line of the preliminary survey as the location of its road. In the meantime, another corporation had made a preliminary survey over the same ground, and made a final location of its road. It was held that the latter company had the better title, and that the adoption by the former company of the line run before its incorporation, could not carry its title back to the date of the preliminary survey.

The application of the rule now laid down as to what constitutes a valid location, to the case before us, disposes of this appeal. The plaintiff company has the right, under its charter and subsequent legislation, to build its road from its present terminus at Hall's to Williamsport, and connect with the

Philadelphia & Erie railroad.  In 1886, and again a year or more before the bill was filed in this case, the engineer of the plaintiff ran over a route from Hall's to Williamsport, connecting with the road of the Philadelphia & Erie company near the lot described in the bill as the Metzger lot, and set stakes along it.  It does not appear in the bill or in the evidence that this preliminary survey was ever reported to the plaintiff company, or that any action was ever taken by the company to fix the location of its road between Hall's and the intersection with the Philadelphia & Erie in Williamsport.  In the meantime, the latter company, in locating a branch of its road, had run and adopted a line crossing one corner of the Metzger lot over which the plaintiff claimed to have made a location by the act of its engineer, and was proceeding to have an assessment of the damages made in the manner provided by law, when this bill was filed and an injunction obtained in the court below restraining the defendant from proceeding further in its effort to perfect its title to the location made for its branch over the Metzger lot.  The answer denied the plaintiff's title in these words : " The defendant denies that the said plaintiff ever made a valid and legal location of the line of its railroad upon the lot of the said John Metzger."  The plaintiff was thus called upon to show the fact of the location of its road upon the land, or upon some part of the land, which the defendant claimed the right to occupy under its location of its branch.  It did not show, or make any effort to show, the location of the line of its road.  When this want of title in the plaintiff was urged upon the attention of the learned judge of the court below, he seemed to recognize its importance as a general proposition, but to think that it was rendered of no consequence in this case by the state of the pleadings.  He said : " It is urged by the defendant that there is no evidence that the directors of the plaintiff ever authorized the location of this road.  It might be sufficient answer to this allegation to say that there was no such issue raised by the pleadings."  But we have seen that it was distinctly raised.  The learned master found that the plaintiff's road had been located by an engineer.  He did not find that the company had ever taken any action whatever, either before or after the engineer ran over the route.  He could not, from the evidence.  An engi-

neer may make explorations in advance of a location, or he may re-mark the line or adjust the grades after the adoption of a location, but an engineer alone cannot locate a railroad so as to give title to the company that employs him. He is not the company. The right of eminent domain does not reside in him.

Until the plaintiff was able to show that it had acquired title to the Metzger lot or some portion of it, by the location of its road upon it, it had no standing ground in a court of equity from which to ask an injunction in this case, and it should not have been granted. It sought to restrain the defendant from making an entry on the Metzger lot, because that lot had been already appropriated by itself to its own corporate uses. The fact on which its right to be heard rested was clearly and flatly denied by the defendant. No effort was made to show it, and without it the plaintiff was without a foundation on which his prayer for an injunction could rest.

> The decree of the court below is reversed; the injunction is dissolved, and the bill dismissed at the costs of the plaintiff, the appellee.