## ROB. GRAHAM v. PITTSBURGH ETC. R. CO.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
OF LAWRENCE COUNTY.

Argued October 12, 1891—Decided November 9, 1891.
[To be reported.]

1. A railroad company, claiming to be the owner of a strip of ground, en- tered upon it and constructed a railroad thereon.    Afterwards, the land

Statement of Facts.

having been recovered from it in ejectment, the company filed a bond and appropriated an easement of way under the right of eminent domain. In assessing damages for such appropriation, they were to be computed as of the date of filing the bond.

2. Evidence was admissible, however, to show the condition of the land at the time of the company's original entry; and the jury were to compare its value in that condition, as of the date of the lawful appropriation, with its value at the same date as affected by the railroad: Wheeling R. Co. v. Warrell, 122 Pa. 613; Allegheny R. Co. v. Colwell, 2 Mona. 300; Oliver v. Railway Co., 131 Pa. 408; Lawrence's App., 78 Pa. 365, distinguished.

3. At the time of such original entry, the strip of land was part of a farm of 131 acres, but, before the filing of the bond, the landowner had conveyed in fee to another company another strip of ground extending across said farm, which that company purchased and used for the roadway of its railroad. Damages for the appropriation of the strip first mentioned, were to be assessed with reference to the 131 acres as a whole.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 78 October Term 1891, Sup. Ct.; court below, No. 14 December Term 1890, C. P.

On September 27, 1890, the Pittsburgh & Lake Erie Railroad Company filed its petition for the appointment of viewers to assess damages for the appropriation by said company of a certain strip of land belonging to Robert Graham, for the purposes of its railroad. Viewers appointed having made a report assessing damages, the railroad company entered an appeal therefrom on November 20, 1890. On December 3, 1890, the company presented to the court its bond, conditioned for the payment to Robert Graham of such damages as might be determined to be due him, with a petition praying for its approval; whereupon the court approved the bond and directed that it be placed on file.

An issue having been framed, in pursuance of the appeal from the award of viewers, the same was tried on January 21, 1891, when the following facts were shown:

In 1887, the plaintiff, Robert Graham, was the owner of 131 acres of land in Mahoning township. The Ohio and Pennsylvania Canal had been constructed through that land many years before, and in 1873 the operation of the canal was abandoned and it was sold by a receiver, the defendant company ultimately

becoming its owner.　In November, 1877, the defendant, claiming ownership in fee of the land which had been occupied by the canal, entered thereon and commenced the construction of its railroad through the plaintiff's farm on the site of the canal. The railroad was completed in 1878.　Subsequently, Graham brought an action of ejectment against the company for the strip of ground occupied by its railroad, and recovered a judgment therein ;* whereupon this proceeding was commenced.

The plaintiff, being upon the stand as a witness, was asked by his counsel:

" Q. What did you consider the fair market value of your farm at the time this road was located and constructed; immediately afterward and before ?　A. At that time, twelve or thirteen years ago ?　Q. Yes sir ?　A. It was worth one hundred dollars an acre."

The defence object to evidence of the value of this farm twelve or thirteen years ago, as incompetent and irrelevant in this case, as prior to the time that the railroad company appropriated the land for railroad purposes ; and further allege and propose to show that the entry of the railroad company, under the exercise of the right of eminent domain, to acquire the easement upon this land, was by their petition to this court for the appointment of viewers to assess damages, filed September 27, 1890, and by bond approved by this court December 3, 1890.

By the court: Under the authorities cited by the counsel for the defence, viz., Harrisburg v. Crangle, 3 W. & S. 460 ; McClinton v. Railway Co., 66 Pa. 404 ; Bethlehem Water Co. v. Yoder, 112 Pa. 136, this objection must be sustained.　Therefore, the objection is sustained and offer not admitted, but inquiry limited to the time of the filing of defendant's petition, the inception of the suit now on trial; exception.[1]

On his cross-examination, the witness stated that about 1882 he conveyed in fee-simple to the Pittsburgh, Cleveland & Toledo Railroad Co. a strip of ground sixty feet in width, immediately north of and adjoining the ground occupied by the defendant's

---

* This recovery was obtained in accordance with the principles settled by the decision of the Supreme Court in a similar case: Pittsburgh etc. R. Co. v. Bruce, 102 Pa. 23.

Statement of Facts.

railroad, and extending across his farm from the east to the west side thereof, upon which the Pittsburgh, Cleveland & Toledo railroad was afterwards constructed.

William Graham being called as a witness for the plaintiff, the following offer was made:

Plaintiff's counsel propose to prove by the witness on the stand that, at the time of the location of the Pittsburgh & Lake Erie railroad, Mr. Graham owned a farm or tract of land, containing about 130 acres that he used as a whole; that he continued so to use it as a farm; that he still uses it as a farm; that when the railroad company entered upon it, it was an entire tract of land, and used as a whole farm: to prove by the witness the damage to the farm as a whole, by the location and construction of the Pittsburgh & Lake Erie railroad.

The defence object to the offer for the following reasons: This being a proceeding by the defendant, to acquire a right of way or easement for its railroad commenced on September 27, 1890, and the inquiry here being the value of the purchase of that easement, and it being admitted by the plaintiff on the witness stand, that the tract of land, upon which the defendant has its road and is seeking to procure a right of way, is bounded on the north by lands not owned by plaintiff, and on the east and west by lands not owned by the plaintiff, all evidence of the effect of this railroad upon the value of any other tract of land distinct from that on which the railroad is seeking to acquire an easement, is totally irrelevant and immaterial in this issue; for any injury done by the defendant prior to the proceeding to procure the right of way under the exercise of the right of eminent domain, the plaintiff has a remedy at common law by action of trespass, and it is not a legitimate subject matter of inquiry in this case.

By the court: This offer and objection involves much the same as the former offer ruled by the court in this trial; and if the principles decided in the authorities cited are to be considered authority in this court, and we believe they are, being from the court of last resort, then the inquiry is limited in this issue to the injury done as, at, and from the date of the filing of the petition, the inception of the proceedings in this suit, viz., September 27, 1890; and, together with the reasons set out in the objection, this objection must be sustained.

Charge of Court below.

The objection is therefore sustained, and the offer limited to the inquiry under this authority, to the damage to the land, a part of which defendant company claims to condemn; this as we understand it, without prejudice to the plaintiff in his right of action for damages or mesne profits from the time of the original entry until the commencement of proceedings in this case; exception.[2]

George Book, having testified for the plaintiff that in his judgment the construction of the defendant's railroad depreciated the value of that part of the plaintiff's land lying south of the Pittsburgh, Cleveland & Toledo railroad, containing about nine acres, so that it was worth hardly anything, and that without the railroad it would be worth eight hundred dollars, was cross-examined as follows:

" Q. Where did you make the boundary of the nine acres, the south boundary? A. About the middle of the river. Q. Mr. Book, do you consider that an acre, or two acres, or five acres, under the bottom of the Mahoning river, with the river there, has any market value? A. It can have of course. Q. Do you think it has? A. Of course. Q. Now I will come back and ask you again: Do you think upon your oath, that you could sell six, seven or eight acres in the bottom of the river, a part of the Graham tract, at public sale, and if so, for how much?"

Plaintiff's counsel object to the question as not cross-examination; and for the further reason that the inquiry is not as to either the value of the land or the damage to the land taken by a piece, but as a whole. What is the value of the whole land, or what is the damage to the whole land; and not what is the value of three or four acres of the river bottom taken separately.

By the court: The principle contended for in this objection is good, but not applicable. Having examined the witness relative to this matter, generally, it is the province of the defence on cross-examination to inquire into the faith upon which he predicates his conclusion. The objection is overruled; exception.[3]

At the close of the testimony the court, HAZEN, P. J., charged the jury in part as follows:

It has cropped out, in your hearing in this case, that the

ejectment proceedings brought against defendant company were decided in plaintiff's favor. Following that, to wit, on September 27, 1890, a petition was presented to court by defendant company. It is true, the law gives either party the right to commence, but the proceedings in this instance were commenced by the defendant company, and were to determine the compensation which Robert Graham was entitled to receive for their occupancy of his land, from that time, as they admit, wrongfully.

In considering the question, it is the duty of the jury to take into account the whole piece. That brings up the question, what constituted the whole piece? It seems that Robert Graham owned a much larger tract of land than the one now in question, at the time the railroad went on there in 1877 or 1878. After the decision of the court of last resort, on the principles involved in the case of Bruce v. Railroad Co., it was very clear that the railroad company, so far as they occupied plaintiff's ground, stood in the same position, and were there wrongfully, and that the plaintiff had his right of action for damages for the time they had been there. That right exists to-day, for the damages sustained by him through the tortious occupancy of that land by the defendant company, from the time they entered it and constructed their railroad, to the time that the railroad company undertook, by this proceeding, to exercise the right of eminent domain given them by their charter, by the commonwealth of Pennsylvania.

That the owner of the land is entitled to receive compensation for the injury sustained there can be no question. . . . . [It is not claimed that this was paid at the time they originally went there; but the right of eminent domain which the railroad company, a corporation under the laws of the state, had, enabled them at any time, just as the law gave the right to the landowner at any time, to commence proceedings to have the question determined; but, when they do commence, no matter which starts the proceedings, unless by mutual consent, if the proceedings be started any time subsequent to the actual taking and occupancy, the question can only be adjudicated as of the date of the commencement; and in this case the railroad company commenced at the time alleged, to have adjudicated the compensation for the land then by the company elected to be retained under the right of eminent domain.] [4]

### Charge of Court below.

When the case was opened, so far as the court knew, the boundary named in the papers was supposed to be the whole tract; but when the plaintiff testified, the first witness called, it appeared very clearly that the tract or piece of land which was occupied, and which the jury in this case are asked to determine the compensation for, consisted of that part lying between the lands sold and conveyed by the plaintiff to the Pittsburgh, Cleveland & Toledo Railroad Co., on the north, and his south line, which he claims to be in the middle thread of the Mahoning river, containing some nine or ten acres. You have heard the testimony, and will remember the amount. That, then, showed clearly the piece and whole tract, a part of which defendant company chose to exercise the right of eminent domain upon and retain, as they, under the law, had a right to do; and when the question was brought to the attention of the court, the proofs were narrowed to that piece of land; and if, as we have already stated in your hearing, the principles decided by the court of last resort, which are binding upon the lower court, and binding upon this court, are to be followed, then the question is, as to what damage, what injury, what destruction, measured by dollars,—in the language of the constitution,—" taken, injured, or destroyed," has the plaintiff a right to recover from the defendant company. . . . . The true measure of damages is the difference between what the whole property, the whole piece of land, unaffected by the railroad, would have sold for, and what it would have sold for as affected by the railroad. . . . .

The defendant asks the court to instruct you upon the following points:

1. In this proceeding, commenced by the defendant to procure the right of way under the provisions of the statute, for its railroad on the land of the plaintiff, the jurys' inquiries and consideration should be limited and confined to the evidence of facts affecting the value, the advantages, and disadvantages, or the injury and the benefits to the particular tract over which the defendant seeks to procure the right of way, and not to any other lands of plaintiff.

Answer: This is affirmed.[5]

2. In this case, the jury cannot take into consideration and compensate the plaintiff for any injuries or damages he may

have sustained by any tortious or unlawful entry of defendant made upon his land, not under the exercise of the right of eminent domain or with a view of shortly appropriating it under the provisions of the statute.

Answer : This is affirmed.

Gentlemen, at the commencement of this suit, had it been agreed to by both parties when it was clearly manifested by plaintiff so to do, to have determined the compensation for the land taken, injured, or destroyed, as to the whole tract of land owned by plaintiff at the time of the entry of the railroad and appropriation of the land when the road was constructed, we think it would have been competent to have done so, for anything that has been presented to the court, and we know of nothing ourselves, but that would have to be by consent of both parties. Not having been consented to by both parties, then, it is narrowed to that which the law fixes. . . . .

—The jury returned a verdict for the plaintiff for $185. Judgment having been entered, the plaintiff took this appeal, assigning for error :

1, 2. The refusal of plaintiff's offers.[1] [2]

3. The admission of defendant's offer.[3]

4. The part of the charge embraced in [ ] [4]

5. The answer to defendant's points.[5]

*Mr. J. Norman Martin* (with him *Mr. E. T. Kurtz*), for the appellant :

1. The entry of defendant under a claim of title did not affect its right afterwards to have the damages ascertained and its possession converted into a lawful one : Oliver v. Railway Co., 131 Pa. 408 ; Wheeling etc. R. Co. v. Warrell, 122 Pa. 613. The road was constructed with plaintiff's knowledge and without his objection, his conduct being the same as that of the guardian in Oliver v. Railway Co., supra ; and the damages should be assessed as of the date of the entry, as was done in that case. An action of trespass will lie for an unlawful entry : Gilmore v. Railway Co., 104 Pa. 275 ; but the landowner may waive the tort and recover the entire damages in a proceeding under the statute ; Western Penna. R. Co. v. Johnston, 59 Pa. 290 ; Bethlehem Water Co. v. Yoder, 112 Pa. 136.

2. When the defendant commenced this proceeding, on Sep-

tember 27, 1890, it had not acquired an easement on the land. It was not until the bond was approved on December 3, 1890, that its possession became lawful: Dimmick v. Brodhead, 75 Pa. 464; Buffalo etc. R. Co. v. Harvey, 107 Pa. 319. But it had a right under the statute to begin the proceeding on September 27th, and in thus proceeding, as a trespasser, to have the damages assessed, they included the damages then existing, occasioned by its trespass, along with the value of the rights it sought to acquire. The plaintiff should have been permitted to show that the lands north and south of the Pittsburgh, Cleveland & Toledo railroad were used as a single farm. Notwithstanding that company received a conveyance in fee, it took the land so conveyed for railroad purposes: Warrell v. Railroad Co., 130 Pa. 600; Zimmerman v. Canal Co., 1 W. & S. 346. And it was error to permit the witness Book to be asked on cross-examination to value a part of the land in question: Delaware etc. R. Co. v. Burson, 61 Pa. 369; Schuylkill etc. R. Co. v. Stocker, 128 Pa. 233.

*Mr. D. B. Kurtz* (with him *Mr. L. T. Kurtz*), for the appellee:

1. This proceeding being a special remedy provided by statute, it cannot, except by agreement of the parties, be used to ascertain and enforce payment of damages for a tortious entry upon land. The appropriate remedy for that is an action of trespass. The object of the proceeding is to acquire an easement, solely upon the separate piece of plaintiff's land lying south of the land conveyed to the Pittsburgh, Cleveland & Toledo Railroad Co.; and hence, the whole inquiry was properly limited to the advantages and disadvantages resulting to that tract.

2. These positions are fully sustained by the following authorities: McClinton v. Railway Co., 66 Pa. 404; Harrisburg v. Crangle, 3 W. & S. 460; Bethlehem Water W. Co. v. Yoder, 112 Pa. 136; Penna. R. Co. v. Eby, 107 Pa. 166; Secombe v. Railroad Co., 23 Wall. 108. If the defendant's right was not fully vested until approval of the bond, the fact that the proceeding was commenced before that worked no injustice to the plaintiff, but on the contrary resulted to his advantage by increasing the verdict to the extent of interest for the interval;

and hence it could not operate as an estoppel against the defendant: Lorain v. Hall, 33 Pa. 270; Werkheiser v. Werkheiser, 3 R. 326; Ruggles v. Alexander, 2 R. 231; Lewis v. Bradford, 10 W. 67; Oller v. Bonebrake, 65 Pa. 338.

OPINION, MR. JUSTICE CLARK:

The plaintiff is the owner of a tract of land in Mahoning township, Lawrence county, through which formerly passed the Ohio & Pennsylvania Canal, a small portion of his land lying between the canal and the Mahoning river. In 1873, the canal was abandoned; and in November, 1877, the Pittsburgh & Lake Erie Railroad Co., claiming to own the land occupied by the canal, entered and began the construction of their road, which was completed in the fall of 1878. About the year 1882, the Pittsburgh, Cleveland & Toledo Railroad Co. purchased of the plaintiff, in fee, for railroad purposes, a strip of land sixty feet in width, adjoining the land occupied by the defendant and extending across the entire tract, and built their railroad thereon. The plaintiff subsequently brought an ejectment against the Pittsburgh & Lake Erie Railroad Co., the defendant, to settle the title to the strip occupied by their road, formerly covered by the canal, and recovered a judgment, thereby establishing the fact that the original entry by the defendant company for the construction of their road was a trespass upon the plaintiff's land. The subsequent maintenance of the road thereon was therefore a continuing trespass, until the right of way vested in the company, on the approval of their bond on December 3, 1890.

For redress of the injuries resulting from this invasion of the plaintiff's rights, he had, of course, his remedy by an action of trespass: Harrisburg v. Crangle, 3 W. & S. 460; McClinton v. Railway Co., 66 Pa. 404; Dimmick v. Brodhead, 75 Pa. 464. The effect of the subsequent statutory proceeding to assess damages was to divest the title as of the date of filing the bond. In the action of trespass, if one had been brought, the plaintiff would have been entitled to recover damages for the tortious entry, and for any injuries he suffered from that date until the title of the right of way was vested in the company, not as these injuries affected the value of the land, but the enjoyment of it; whereas, in the proceeding to assess damages

under the statute, the measure of damages would be computed upon the value of the land, unaffected by the obstruction of the plaintiff's road, and its value as affected by it. The action of trespass is for the recovery of the damages accrued in the past, whilst the assessment under the statute is for the price of a permanent right or privilege to be enjoyed in the future; but that price must be settled upon a consideration of the value of the land at the time of its lawful appropriation, as it was or in the condition it was before the railroad was constructed, and its value afterwards.

This necessarily involves a knowledge and consideration of the condition of the land before the railroad was built. For, although the damages are to be computed as of the date of the divestiture of the plaintiff's title to the right of way, yet it is plain that the land must be valued, in the first instance, free from the obstructions of the plaintiff's road, and in the condition in which the defendant company found it upon their first entry: Justice v. Railroad Co., 87 Pa. 28. As, at the time of the filing of the bond, the plaintiff had established his right to the property free from the obstruction of the railroad, he has a right to have the assessment made of the land in that state. The sale to the Pittsburgh, Cleveland & Toledo Railroad Co., was, of course, made under stress of the conditions affecting the land at the time, and may have been for a much less consideration than would otherwise have been available: non constat, that but for the appropriation of the defendant's right of way the sale of the adjacent strip would ever have been made; for although the first appropriation was wrongful, it was of a manifestly permanent nature, and was capable of being perfected under the statute.

In estimating the injury done to the plaintiff in the taking of his land for right of way, the value of the land, unaffected by the construction of the railroad, is necessarily referable to some previous condition, for the railroad, at the time of the filing of the bond, was in full operation: we must go back to the time of original entry, to ascertain the condition of the land, upon which the value is to be computed as of the date of the actual and lawful appropriation. What was the condition of the land when the railroad company first entered for the construction of the railroad? What was its value in that condition on Decem-

ber 3, 1890, unaffected by the railroad, and what its value as affected by the railroad? The difference would be the proper measure of damages.

There is a class of cases in which the company has been held to have acquired such an equity as entitled it to a conditional verdict or decree, and an assessment of damages made, in execution of the company's right. In Wheeling etc. R. Co. v. Warrell, 122 Pa. 613, the parties submitted the assessment of damages to certain persons named, who made an award; and, although the amount awarded had never been paid, yet this court held that " by the award, and the agreement on which it was founded," the company " exhibited an equity which properly reduced the judgment to a conditional one, and thus relieved the defendant from a total loss of its improvements." So, in Allegheny V. R. Co. v. Colwell, 2 Mona. 300, decided at the October Term 1888, and not officially reported, it was said: " But, as Colwell was at least passively derelict in knowingly permitting the railroad company to occupy and put its improvements on his land, we agree that it would be inequitable to allow the judgment to work a forfeiture of those improvements; " and execution was accordingly stayed, to enable the company to proceed under the statute. In Oliver v. Railway Co., 131 Pa. 408, where the entry was under a lease from the life-tenant, and with the knowledge and acquiescence of the guardian of the person entitled in remainder, who saw the expenditures made in the construction of the road, it was held that the entry so made could not be treated as a trespass. " In all the cases, however, in which the entry was made with the knowledge and consent of the owner," says our Brother WILLIAMS in that case, " the action has been treated as equitable in character. The corporation, having been permitted to enter in advance of the ascertainment of damages, did not thereby lose its right to proceed in the usual manner to secure their adjustment through the courts, and the action of ejectment has been sustained as a means of quickening the action of the corporation in this regard. While the owner has not parted with his title by his own conveyance, or had it divested by proceedings under the statute, he has parted with the possession under circumstances, and permitted expenditures upon and use of the property of such a character, as to make it inequitable for him to

resume the possession, or to defeat the right of the corporation to proceed under the statute, and add to its lawful possession a lawful title by virtue of a compliance with its provisions."

In all such cases as we have cited, the assessment covers the entire damages, with like effect as if the bond was filed at the time of the original entry. The title of the railroad company, in such a case, comes, not through the proceeding to assess the damages, but through its original entry and appropriation of the right of way, with the consent or without the objection of the owner: Lawrence's App., 78 Pa. 365. But, in the case now under consideration, the defendant entered, at the outset, under a contested claim to the land, in fee. The plaintiff brought an ejectment, and the title was held to be in him. The company was found to be a trespasser, and was answerable as a trespasser, to the extent already stated. There was no equity exhibited, nor was any invoked, which would have justified a conditional judgment. The damages for the right of way are therefore to be estimated according to the general rule established in such cases.

The second, third, fourth and fifth assignments of error are sustained. The offer embraced in the first assignment was not directed to the proper subject of inquiry, and was therefore not admissible.

> The judgment is reversed, and a venire facias de novo awarded.