# The Bethlehem South Gas and Water Company *versus* Yoder et al.

1. Where a corporation under the right of eminent domain enters upon the lands of an individual, without making compensation or tendering a bond as required by statute, the entry is unlawful and the owner of the land may recover damages therefor, in an action of trespass.

2. The subsequent giving of a bond in the mode authorized by statute will not deprive the injured party of his appropriate remedy for trespass. He is entitled to recover for whatever damages he has suffered down to the time of bringing suit, or until bond is filed and approved by the court.

3. Where a jury of view is appointed to assess the damages, under the Act of Assembly, and the injured party, the plaintiff in the action of trespass, submits to the viewers the question of the value of timber cut, and asks that the damages sustained thereby, and for all other injuries done him be allowed, he thereby waives his right to pursue his action of trespass, whether the jury allows him damages or not.

4. The Timber Act of 29th of March, 1824, imposing double and treble damages, does not apply to a corporation, entering upon the land of another and cutting and taking timber trees, under the right of eminent domain.

February 18th, 1886. Before GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. MERCUR, C. J., absent.

ERROR to the Court of Common Pleas of *Lehigh county:* Of January Term, 1886, No. 203.

This was an action of trespass under the Timber Act of 1824. The first count of the declaration was for cutting down timber trees; the second for cutting and converting the same, and the other counts were for trespass at common law. The defendants pleaded the general issue, and before the trial they filed a special plea setting forth that, "The Bethlehem South Gas & Water Company" was a corporation duly incorporated by Act of General Assembly of 13th April, 1864, by and under

· which it is authorized and empowered; *inter alia*, " to provide, erect and maintain all works and machinery, engines and apparatus necessary and proper for making, raising and introducing into the villages of Bethlehem South, &c., a sufficient supply of gas and pure water, and for that purpose to provide, erect and maintain all proper buildings, cisterns and reservoirs for the reception of gas and water to be introduced, and by themselves, their agents, engineers and workmen to enter upon such lands and enclosures as may be necessary to occupy for the purposes aforesaid," and that the said act further provides that "if any injury be done to private property, the said company shall make compensation according to the provisions of the 11th section of an act entitled, "An Act regulating railroads, approved February 19th, 1849." The plea further set forth that a bond had been filed and approved to secure the damages likely to result to the plaintiffs, and that viewers were duly appointed to assess damages as provided by said Act of Assembly; that the viewers afterwards did assess damages to the plaintiffs for the identical trespasses complained of in the declaration, and that their report was duly confirmed by the court. This plea was not demurred to nor replied to.

· · On the trial of the case before ALBRIGHT, P. J., the following facts appeared :—

. By deed dated June 21st, 1883, Joseph L. Yoder became the owner of a messuage and tract of land situate in Salisbury Township, Lehigh County, near the borough of South Bethlehem, a part of which is farmland and the balance woodland. Mr. Yoder died in the spring of 1885 intestate, seized *inter alia*, of this tract of land, the plaintiffs are his heirs at law, in whom the title to this tract of land became vested by descent.

The Bethlehem South Gas and Water Company was incorporated by the Act of Assembly of April 13th, 1864, P. L., 403, for the purpose of supplying the borough of Bethlehem South, and the villages adjacent thereto, with gas and water, and for this purpose it is authorized by its charter to enter upon such lands, etc., as may be necessary for its purposes; and the charter provides that " if any injury be done to private property the said company shall make compensation therefor, or give security for such compensation, according to the provisions of the eleventh section of an act entitled, " An Act Regulating Railroads," approved February 19th, 1849, P. L., 83.

· In the spring of 1885, after the death of Mr. Yoder, the Bethlehem South Gas and Water Company determined to erect reservoirs, to supply Bethlehem South and the adjacent villages with water, and for this purpose they entered upon said tract of land, the property of the plaintiffs below, and

surveyed and appropriated about two and one third acres of land to their own use; Brown & Goodnow, two of the defendants below, being the contractors for the company, under whose immediate supervision the work was done. The land appropriated was timbered with chestnut, hickory, white oak, poplar and black oak.

The defendants below by themselves, their agents, servants, and employées, entered upon the premises in the early part of June, 1885, and on the 10th of June they commenced cutting down and removing the timber, and by the 24th of June they had all the timber cut and removed. They then entered upon the premises with horses, carts, etc., and with a large force of workmen, and commenced excavations for their reservoirs.

The company before the committing of the trespasses complained of neither made compensation for the land appropriated and the injuries to be done, nor gave security as required by law.

On July 24th, 1885, the plaintiffs below brought this action of trespass *quare clausum fregit et de bonis asportatis*, against the Bethlehem South Gas and Water Company and Brown & Goodnow, the contractors.

On July 27th, 1885, after the bringing of this suit, the said company presented its petition to the Court of Common Pleas for the appointment of viewers, etc., and on the same day viewers were appointed.

On July 28th, 1885, said company filed a bond in the sum of $2,000, which was approved by the court on the same day, conditioned for the payment to the heirs of Joseph L. Yoder, deceased, " such amount of damages as they or either of them shall be entitled to receive, for the entering and taking by the said company of the said land, etc."

The viewers met on August 17th, and again on August 21st, 1885.

The heirs were represented at the meeting of the viewers by counsel and by the administrator of Mr. Yoder, deceased, also one of the heirs.

The defendants offered to prove at the trial of this case that at the meeting of the viewers it was agreed by Mr. Lehman on the part of the company and one of these heirs, and Mr. Kemerer, the attorney-in-fact for all the heirs, that " all the damages they had suffered by reason of the entry upon this real estate, and any injury to any property should be submitted to the viewers, and that whatever amount they would fix should be the damages."

This offer was overruled and exception taken. (Second assignment of error.)

The defendants again offered to prove by one of the viewers

that at the time the damages were assessed the plaintiffs, "of their own accord, introduced evidence to show the value of the timber that was cut down, and asked that the amount of damages sustained be allowed, and that the jury in their report, in pursuance of that proceeding, did allow damages for these very trees, and for every other injury that was done to the plaintiffs." This offer was also overruled and an exception taken. (Third assignment of error.)

The jury of view assessed the damages at $818.

Neither the company nor the land owners appealed from or filed exceptions to the report of the viewers, but exceptions were filed by the Moravian College and Theological Seminary, a mortgagee, which were dismissed by the court on November 30th, 1885.

The defendant presented, *inter alia*, the following points for charge :—

1. Under all the evidence, the verdict must be for the defendants.

Ans. Negatived. (Sixth assignment of error.)

2. The object of the act of 1824 is the prevention of wilful or careless cutting of another's timber, and it has no application in a case where such timber is cut by a corporation in the exercise of its right of eminent domain, although such timber was cut before compensation made or bond filed, if such compensation be afterwards made.

Ans. Negatived. (Seventh assignment of error.)

4. If before bringing this suit the plaintiffs had due notice of the intention of the defendants to file a sufficient bond, and to make application for the appointment of viewers under the provisions of their charter, then they cannot recover in this form of action.

Ans. Negatived. (Eighth assignment of error.)

In the general charge the court instructed the jury, *inter alia*, as follows:

This suit was brought on the 24th day of July, 1885. After that date the corporation proceeded to file a bond and had viewers appointed to assess the damages of the Yoders. Where a man's land is entered by a corporation which has the right to take land, either the corporation or the owner of the land may petition the court for viewers to assess the damages. The damages for the taking of land must be assessed in that way, the owner of the land cannot bring his action of trespass to recover for the taking and occupying of the land. [Gentlemen, if you find that the defendants, or any of them, before the 24th day of July, entered upon the lands of the plaintiffs, they were trespassers and the plaintiffs are entitled to recover. It seems to be uncontradicted that there was an entry before

the 24th day of July. If that is proved, the plaintiffs are entitled to recover something, and they are entitled to recover for all the injury done to the land up to the date of the bringing of the suit.] (Fourth assignment of error.)

If you find for the plaintiffs you will ask yourselves what are the damages? What were the damages to the soil by passing over the land? You will bring nothing into this case that occurred after the 24th day of July. The plaintiffs can only be compensated for damage done up to the date of the bringing of the suit. They claim damages for the cutting down of trees. It seems trees were cut upon this property at some time. There is an Act of Assembly, which says that in all cases where "any person shall cut down or fell, or employ any person or persons to cut down or fell any timber, tree or trees growing upon the lands of another, without the consent of the owner thereof, he, she or they so offending, shall be liable to pay to such owner double the value of such tree or trees so cut down or felled; or in case of the conversion thereof to the use of such offender or offenders, treble the value thereof."

If the defendants, before the 24th day of July last, cut down trees upon the land of the plaintiffs without their consent, they (plaintiffs) are entitled to recover damages under the Act of Assembly I have read to you. The Act speaks of timber trees, which are such as are used not only for building purposes, but in the mechanical arts. If the trees cut down were suitable for building purposes, or for use in the mechanical arts, they come under the head of timber trees. [If you find there was a cutting, without the consent of the plaintiffs before the 24th of July, and you can ascertain from the evidence that some of the trees were timber trees, and if you can also find what the timber trees were worth, you can give the plaintiffs double the value of those timber trees unlawfully cut down, and if you find they appropriated any to their own use, then triple the value of such timber trees.] (Fifth assignment of error.)

Verdict for the plaintiffs in the sum of $274.80, and thereupon judgment; whereupon the defendant took this writ, assigning for error the rejection of its offer of evidence, the answer to its points, and those portions of the general charge included within brackets.

*Robert L. Cope* (*J. D. Brodhead* with him), for plaintiff in error.—1. Under the Act incorporating the defendant: P. L. 1864, 403, the defendant is made liable for all injuries, direct or consequential, past or future, that may be done to private property by the company in the exercise of its franchises.

[Bethlehem South Gas and Water Co. v. Yoder.]

And compensation therefor shall be made as provided by the 11th section of the Railroad Act. This Act, although passed before the constitution of 1874 was adopted, is in perfect harmony with its provisions. There can be no doubt but that the plaintiffs, in the proceedings to assess damages under the Railroad Act, could have recovered full damages for all the injuries complained of in the declaration. They could also recover in an action of trespass for such injuries as were done by the company before filing a bond or making compensation. This is conceded ; and it would be useless to dispute so well settled a principle of law. But there is no authority anywhere that authorizes a recovery for the same injuries in *both* forms of action. It is true there are cases in which it is held that trespass will lie, notwithstanding the proceedings to assess damages, but the principle we invoke in this case has nowhere been disputed: Harrisburg *v.* Crangle, 3 W. & S., 460 ; Pennsylvania R. R. Co. *v.* Eby, 11 Out., 166.

2. It is held in Dimmick *et al. v.* Brodhead, 75 Pa. St., 464, that the plaintiff is entitled to recover for whatever damages he suffered down to the time of bringing suit, or until a bond is filed and approved. This is what the court below said in its charge to the jury, and the learned court would undoubtedly have been right if there had not been a *prior judgment for the same damages* in another proceeding. "The law does not tolerate a second judgment for the same thing between the same parties whether the claim is upon contract or tort:" Sykes *v.* Gerber, 98 Pa. St., 179. The distinction between damages for injuries before assessment, and those usually taken into consideration at the time of the assessment is well illustrated by The Lafayette, Muncie & Bloomington R. R. Co. *v.* Murdock *et al.,* 68 Ind., 137.

3. The parties by *consent* might have submitted the question of damages both before and after the filing of the bond: Pusey *v.* City of Allegheny, 98 Pa. St., 522. We offered to prove that they did this by *agreement.* Our offer must be taken as true. A recovery in one proceeding bars the right to recover in the other: Duffy & McHaffy *v.* Lytle, 5 Watts, 132 ; Casebeer *v.* Mowry, 55 Pa. St., 419.

4. The Act of 1824 did not apply to an entry under the right of eminent domain: Justice *v.* Nesquehoning Valley R. R. Co., 87 Pa. St., 28.

*John Rupp* (*J. B. Kemerer* with him), for defendants in error.—1. In the case of Dimmick *et al. v.* Broadhead, 25 P. F. S., 464, it is said: "It has been settled in a series of cases that it is trespass in a private corporation to take land for a public use without first making compensation, or giving ade-

quate security therefor. The constitutional provision is express that this must be done before such property shall be taken." And in that case it was held that trespass could be sustained although a bond was afterwards given and approved by the court. To the same effect are McClinton v. The Pittsburg, Fort Wayne & Chicago Railway Co., 16 P. F. S., 404; The Borough of Harrisburg v. Crangle, 3 W. & S., 460; Pennsylvania R. R. Co. v. Eby, 11 Out., 166.

If the original entry was unlawful the subsequent filing of the bond and the proceedings thereunder does not deprive the owner of the right to recover for the prior injury in an action of trespass: The Borough of Harrisburg v. Crangle, *supra*.

Where the original entry is tortious the owner's right to damages for the trespass is a vested right of which he cannot be deprived. The statutory proceeding is not to recover past damages under an unlawful entry, but compensation for a right to be vested in the company: McClinton v. The Pittsburg, Fort Wayne & Chicago Railway Co., 16 P. F. S., 404.

2. Under the Act of 1824 it is not necessary to show that the timber was cut, knowing it to be upon another's land, or that it was done recklessly, or in a spirit of oppression. All that it is necessary to show is, that it was done without the consent of the owner. The statute then imposes the penalty: O'Reilly *et al. v.* Shadle *et al.*, 9 Casey, 489. The want of the owner's consent creates the liability of the trespasser: Watson v. Rynd *et al.*, 26 P. F. S., 59. And trespass is the proper remedy: Welsh v. Anthony, 4 Harris, 254; Hughes *et al. v.* Stevens, 12 Casey, 320.

Mr. Justice PAXSON delivered the opinion of the court, March 29th, 1886.

It is not denied that the defendants below were trespassers in entering upon plaintiff's land without making compensation or tendering a bond under the Act of Assembly. The entry was unlawful, and the owners may recover damages therefor in an action of trespass : The Borough of Harrisburg v. Crangle, 3 W. & S., 460. The subsequent giving of security in the mode authorized by statute will not deprive the injured party of his appropriate remedy for trespass : Pa. R. R. Co. v. Eby, 107 Pa. St. Rep., 166. And the plaintiff is entitled to recover for whatever damages he has suffered down to the time of bringing suit, or until a bond is filed and approved by the court: Dimmick v. Brodhead, 75 Id., 464.

The bond of the defendants was filed and approved on the 24th day of July, 1885. It is not disputed that they entered upon the lands in question before that time. It was alleged that the bond was not filed earlier by reason of their not being

[Bethlehem South Gas and Water Co. *v.* Yoder.]

able to find all the owners of the property. This is not material except perhaps as bearing upon the question of positive damages. A few days after the bond was filed this suit was commenced below, and almost simultaneously therewith a jury of view was appointed to assess the damages under the Act of Assembly.

In the action of trespass the plaintiffs were entitled to recover for the unlawful entry, and for any damages to the property down to the filing and approval of the bond; in the proceeding before the viewers they were entitled to recover the value of the property taken as in other cases where land is appropriated by a corporation under the right of eminent domain.

So far there is no dispute, and we are in harmony with the rulings of the court below. But upon the trial of this action of trespass the defendants offered to prove that upon the hearing before the viewers the plaintiffs offered to submit, and did submit, to said viewers the question of the value of the timber cut, and asked that the damages sustained therefor be allowed; and that the jury in their report, in pursuance thereof, did allow damages for these very trees, and for every other injury done to the plaintiffs.

This evidence was excluded by the court, and forms the subject of the third assignment of error.

As the jury were not allowed to pass upon this question we must assume that the defendants could have sustained their offer. If the facts be as stated in the offer, it is too plain for argument that the plaintiffs will be twice paid for their timber. It is manifest this result would be grossly unjust, and indicates either a defect in the law or the mode of applying it. The hardship and injustice in this case is the more marked from the fact that in the action of trespass the jury were instructed that they might, under the Act of Assembly, give double or treble damages for the timber trees.

While the plaintiffs had a right, as before observed, to their action of trespass for the unlawful entry prior to the filing and approval of the bond, they were not bound to pursue that remedy. They could waive it and submit their whole case to the jury of view. And if they did so submit it they are bound by it, whether the viewers allowed it or not. An examination of the report, however, leaves little doubt in our minds that the viewers did pass upon it, and allowed the plaintiffs the very damages recovered in the present suit. The land taken was two and twenty-nine hundredths acres of uncleared timber land on the top of a mountain. The jury allowed for the value of the land taken the sum of $535, and for consequential damages, including " all timber used, taken away and cut

on the land aforesaid," the further sum of $283. As it was conceded that the timber was all cut before the bond was filed it seems clear that the jury gave damages for the only substantial injury complained of in the action of trespass. If this is so, the plaintiffs in this suit cannot recover even nominal damages, for the plain reason that the plaintiffs cannot submit a part of their cause of action to the viewers and go on with the balance of it in an action of trespass. The law will not allow a party to split up his claim in this way. The rule is thus correctly stated by Justice LOWRIE in Simes v. Zane, 24 Pa. St. Rep., at page 244: " But the rule that prevents him [plaintiff] from splitting up his cause of action into several fragments takes away his right of action for the residue entirely. Having once claimed by action or defence a part of an undivided subject matter, the law allows him no remedy for the other part, else there would be no limit to litigation." And see Logan v. Caffrey, 30 Pa. St. Rep., 196.

The fifth and seventh assignments of error raise the question whether the timber Act of 1824 applies to this case. The learned judge held that it did, and in this we think there was error. As was well remarked by Justice TRUNKEY, in Kramer v. Goodlander, 98 Pa. St. Rep., at page 363: " It is not the purpose of the statute to enable him [the owner] to sell his timber at such prices. Its object is the prevention of wilful or careless cutting of another's timber by at once punishing the wrong-doer and amply compensating the owner." It would be a perversion of the spirit of the Act to apply it to such a case as this. The cutting of the timber was a mere incident of the taking of the land for a public use. It is true the original taking was a trespass, but it was a technical trespass merely, and arose from the difficulty of finding the names of all the owners of the property. That this was a real difficulty seems plain from the fact that the jury of view, in assessing the damages, refer to two of the owners " whose names to the jurors are unknown." In this connection the remarks of Chief Justice AGNEW, in Justice v. Nesquehoning Valley R. R. Co., 87 Pa. St. Rep., 23, where there had been a similar unlawful entry by reason of inability to find the owners, are appropriate: " Modern inventions and discoveries have so far transcended the conditions of former times that to apply the rule as to a mere trespasser whose entry is a tort, pure and simple, to the case of one authorized to enter for a great public purpose, merely because of an irregularity in the manner of proceeding, would be as vain as to attempt to dress a full grown man in the garb of his childhood. This is not the case of a mere trespass by one having no

authority to enter, but of one representing the state herself, clothed with the power of eminent domain, having the right to enter, and to place these materials on the land taken for public use—materials essential to the very purpose for which the state has declared in the grant of the charter. It is true the entry was a trespass, by reason of an omission to do an act required for the security of the citizen, to wit: to make compensation or give security for it. For this injury the citizen is entitled to redress. But his redress cannot extend beyond his injury."

In the case in hand the defendants had the right to take the land and cut the timber for a public use. It was in no sense a wilful or careless cutting of said timber. It was a technical trespass, and for that the plaintiffs are entitled to recover for the injury sustained. But to hold that the case came within the Act of 1824 would be a misapplication of the law.

The judgment is reversed, and a *venire facias de novo* awarded.