# The Standard Plate Glass Company v. The Butler Water Company, Appellant.

*Riparian rights—Upper and lower owners—Use of waters.*

Ownership of land does not include ownership of the water which flows over or past it. The right which the owner has is to the use of it in common with the other owners as an incident to the land.

For many purposes—for example, for domestic use and for watering cattle—the riparian owner may divert, detain and even consume the water without regard to the effect which such use may have, in case of deficiency,

upon proprietors lower down the stream; but he has not in all respects an equal right thus to divert, detain or consume the water for purposes, which, although the same in kind, are in no way connected with the use of the land.

*Water and water rights—Illegal diversion—Right of action.*

An illegal diversion of water by an upper riparian owner is a continuing injury and is not referable to the day when first commenced, but successive actions may be brought as long as it is continued.

The purchaser of an estate upon a stream from which others have unreasonably diverted the water is entitled to recover if such diversion is continued.

*Riparian rights run with land—Eminent domain.*

Riparian rights are incident to the ownership of the banks of the watercourse. They run with the land. They may be granted away or be extinguished by condemnation proceedings or by prescription, but cannot be defeated by simple appropriation.

*Riparian rights—Diversion of waters—Water company and glass company.*

A water company being an upper riparian owner, and a glass company a lower riparian owner, have the rights of riparian owners only to the stream on which they abut; it follows that the latter may maintain an action to recover such actual and special damages as it sustained in consequence of the detention and diversion of the water notwithstanding its predecessor in title had a right of action in which he could have recovered nominal damages for the infringement of his right to the natural flow of the water during his ownership.

*Riparian owners—Ordinary and extraordinary use of water.*

A riparian owner has the right to the use of the stream as an incident to the land for ordinary purposes, and also for certain purposes which are called extraordinary, provided in such extraordinary use he does not materially diminish its quantity or impair its quality. The reasonable use by a glass company for manufacturing purposes is an incident to riparian ownership by the company of which an upper riparian owner who has exhausted the water, by illegal diversion thereof, has no standing to complain.

*Waters—Illegal diversion by upper riparian owner—Measure of damages.*

The measure of damages for the illegal diversion of water by an upper riparian owner is the expense which the lower owner may be put to in order to supply water to take the place of the water that would have flowed to its land if it had not been diverted by the defendant or upper owner.

Argued May 13, 1897. Appeal, No. 115, April Term, 1897, by defendant, from judgment of C. P. Butler Co., Sept. T., 1895, No. 13, on verdict for plaintiff. Before RICE, P. J.,

WILLARD, WICKHAM, BEAVER, REEDER and ORLADY, JJ. Affirmed.

Trespass. Before BARKER, P. J., of the 47th judicial district, specially presiding.

Trespass by the Standard Plate Glass Company, a corporation engaged in the business of manufacturing plate glass against the Butler Water Company, an upper riparian owner, to recover damages alleged to have been suffered by the plaintiff company as a riparian owner by reason of the diversion of the waters of a creek by the defendant company.

Other facts sufficiently appear in the opinion of the court.

Verdict and judgment for plaintiff for $900 with interest and costs of suit. Defendant appealed.

*Errors assigned* were (1) In instructing the jury in the general charge as follows : " Now, it has been argued by defendant's counsel (and as to this we shall more formally instruct you ·in answering the points submitted by counsel), that the plaintiff company had no right to use this water for artificial purposes created by it, after the defendant company had entered on the stream and commenced taking the water, and then complain because the supply is diminished. If the water company was rightfully taking water from the stream by virtue of its rights of eminent domain it had the right to take all the water, if necessary. If the water company was unlawfully using the water, or occupied the position of an upper riparian owner, as to it, the lower owner would have the right to use all the water for any purpose, and it would not lie in the mouth of the defendant to say to the plaintiff, ' you can use this water for watering cattle or irrigating the ground, but you cannot create an artificial use or demand for the water.' " (2) In the answer to the first point of plaintiff, said point and answer being as follows : " In this action, being an action against a water company to recover injury to land caused by diversion of water from a stream, the case is for the jury where the evidence for the plaintiffs tends to show that the defendant diverted from its regular channel a considerable quantity of water which otherwise would have flowed through and over the plaintiff's land lying on the stream below the point at which the water· is diverted and in

consequence of which diversion the plaintiff sustained injury and this is the law, although the defendant water company is an incorporated company, organized for the purpose of supplying water to the public under the provisions of the act of April 29, 1874. *Answer:* Affirmed." (3) In the answer to second point of plaintiff, said point and answer being as follows : " The fact that such corporation is invested with the right of eminent domain will not authorize such diversion unless the right has been exercised according to law, and by diverting the water without first paying or securing compensation to lower riparian owners, deprived of its use, the corporation thereby becoming a trespasser. *Answer:* Affirmed." (4) In the answer to the fourth point of plaintiff, said point and answer being as follows : " In this case there is no evidence that the defendant had been diverting the water for such period, and it therefore had not acquired such right, and such diversion of the water by the defendant company as has been shown in this case by the proofs on the part of the plaintiff was a trespass, for which defendant company is liable to plaintiff. *Answer:* Affirmed." (5) In the answer to the fifth point of plaintiff, said point and answer being as follows : " The plaintiff is entitled to recover special damages from the defendant in this case, as it has proven that it had, upon its land during the period covered by this action, a glass plant for the manufacture of plate glass, in which it rightfully used a large amount of water and of which use it was deprived by the action of the defendant company in diverting the water of Connoquenessing creek. *Answer:* Affirmed." (6) In answer to the seventh point of plaintiff, said point and answer being as follows : " It having been shown by the undisputed testimony in this case that the plaintiff company is the owner of a tract of land on the banks of the Connoquenessing creek on which it has constructed and since the year 1887 has been operating a plant for the manufacture of plate glass ; that the defendant company is the owner of a tract of land on the banks of said creek about a mile above the land and glass plant of plaintiff company, on which it has constructed a waterworks for the purpose of supplying water to the inhabitants of the town of Butler ; that at the time of bringing this suit and for several years prior thereto the defendant company was and had been diverting large quantities of the

water of said creek from its natural channel, at the point where its works are located, by pumping the same out of said creek into its reservoir and from thence distributing it through its pipes to the inhabitants of the borough of Butler, and that so much of said water as is not consumed by the inhabitants of said borough finds its way through sewer pipes and conduits into said creek about a mile below the land and plant of plaintiff company ; the defendant company is thereby guilty of a trespass in so diverting the waters of said stream, and the verdict must be for the plaintiff. *Answer :* Affirmed." (7) In the answer to the eighth point of plaintiff, said point and answer being as follows : "If by reason of the diversion of the waters of the Connoquenessing creek by the defendant company at the point where its waterworks are located the plaintiff company has been deprived of the natural flow of the waters of said stream to and by its said land and of the use thereof on said land for the purpose of carrying on its business of manufacturing plate glass, the plaintiff company will be entitled to recover as damages in this case the whole amount of the expenditure made necessary by reason of such diversion of the waters of said creek. *Answer :* Affirmed." (8) In the answer to the ninth point of plaintiff, said point and answer being as follows : "Under all the evidence in the case the verdict must be for the plaintiff. *Answer :* Affirmed." (9) In the answer to tenth point of plaintiff, said point and answer being as follows : "The rights of the plaintiff in the waters of Connoquenessing creek, as riparian owner, is to have the free and natural flow of all the waters of said creek to its lands, subject only to such diminution of the same as the defendant may lawfully make as an upper riparian owner, and the plaintiff's right to use said water on its land is limited only by the rights of its lower riparian owners. *Answer :* Affirmed." (10) In the answer to the second point of defendant, said point and answer being as follows : " A party who has the right of eminent domain and who enters under claim of such right, although without qualifying itself by filing bond, is not a trespasser, if the act be done with the consent expressed or tacit of the other party. *Answer :* This point is affirmed, and that brings us to another question : You will observe that the point we affirm is based on the consent, either expressed or implied, by the person who might object.

It is contended here that the plaintiff corporation is estopped from recovering in this suit from the fact that no objection or complaint was made by its predecessor in title at the time the defendant company went upon this stream. You will observe that the provision of the constitution is that water shall not be taken without compensation first paid or secured, and we take it that it is not necessary for a person whose property is taken to go and make a demand; the other party is the acting party, and yet it is good law, as expressed in this point, that where a railroad company goes on a man's land, in his presence, where he can see it all the time, and occupies it, and he, for a very considerable period at least, is silent, to that extent his silence may be construed as consent; he could not bring an action of trespass, and therefore if there is that in this case that warrants you in saying that Mr. Boyd's conduct was such as to be construed as a consent that they should take the water from the stream, then, of course, he could not recover in an action of trespass, nor could his successor in the title. Subject to that qualification, the second point of the defendant's counsel has been affirmed by us." (11) In the answer to the third point of defendant, said point and answer being as follows : " Only the party injured at the time of entry—not a subsequent owner— can complain or maintain an action in any form for such injury, as said in the Supreme Court in Davis v. The Railroad Co., 114 Pa. 308 :—' He can have but one action, the damages cannot be severed, security for one is security for all. The location of a railroad is an appropriation, and vests a right to the damages and the owner of the land at the time of actual location is the party entitled to the damages.' *Answer :* Refused." (12) In the answer to the fifth point of defendant, said point and answer being as follows : " The entry and appropriation of the water in 1878 was complete then and the owner became then entitled to his damages. His right of action accrued at that time. This being more than six years before suit was brought the right of action was barred by the statute. *Answer :* Refused." (13) In the answer to the sixth point of the defendant, said point and answer being as follows : " At the time of the appropriation of the creek by the defendant company the land of the plaintiff company bordering upon the stream being used only for the ordinary purposes to which land is put, and

there being no manufacturing plant upon it such as is now maintained thereon, there having been no claim for damages made for many years by the plaintiff company or those under whom they claim, no demand for a bond having been made, and no notice having been given that the plaintiff company required more water, there can be no recovery of special damages in this case for injuries to the manufacturing plant of the plaintiff company, unless the jury find that the defendant company unreasonably used the water. *Answer:* Refused." (14) In the answer to the seventh point of the defendant, said point and answer being as follows: "The defendant company having entered upon and appropriated the Connoquenessing creek above Bonnie brook, or as much thereof as was necessary for the public use, prior to the erection of plaintiff company's plant, if the jury find that immediately before the erection of the plant the plaintiff company, or those from whom they acquired the property, purchased the twelve acre tract running to the creek, and other properties not bordering on the creek, from different owners, and that the several properties were distinct, and that plaintiff company's plant was erected upon these several properties, the plaintiff company can recover as riparian owner only for damages done to the twelve acres, and if the jury further find that the glass company plant was so erected upon these properties after the appropriation of the stream by the defendant company as to render it impossible to manufacture their product, or any part of it requiring water, on the twelve acres alone, there can be no special damages recovered in this action for injuries to the glass works of the plaintiff company. *Answer:* Refused, in view of the facts of the case as to circumstances of severance of the Boyd farm, purchased by defendants, and the character of their works, and the use made of the land for their purposes." (15) In the answer to the eighth point of defendant, said point and answer being as follows: "The defendant company having entered upon and appropriated the creek above Bonnie brook, or as much as was necessary for the public use, in 1878, and at a time prior to the use of the land now owned by the plaintiff company for manufacturing purposes, if the jury find that the plaintiff company erected their plant with notice of the prior appropriation of the stream for public purposes, they are not entitled to recover special dam-

ages in this action unless the jury also find that the defendant company has, within six years, made an unreasonable use of the water and unnecessarily diverted it.    *Answer :* Refused. Plaintiff company was entitled to the use of all the water coming down the stream; the defendant had no right to divert any of it to its prejudice, and, therefore, the question of an unreasonable use by diversion is not an element in this case.    If the defendant company had the right under its charter to take any water it had the right to take it all, and this being an action of tort the question of reasonable use, as we have said, is not an element."    (16) In the answer to the ninth point of defendant, said point and answer being as follows : " Plaintiff company as riparian owner is only entitled to recover for the water taken from the creek above Bonnie brook the yearly difference for six years before the bringing of this suit between the value of their property on the stream as it was before the waters were taken by defendant company and as it was after such taking as affected by the appropriation.    As the values before and after the appropriation have not been shown, the plaintiff company can only recover nominal damages in this action for such appropriation.    *Answer :* Refused."

*T. C. Campbell* and *John M. Thompson,* with them *W. D. Brandon,* for appellant.—One cannot maintain trespass for acts he has not only permitted, but encouraged and approved.    The service had attached, the easement had been created, the entry, appropriation and use made long before the inception of plaintiff's title.    No difference whether this service had been fixed by the act of the owner, or by another, its legal effect was precisely the same : Goddard on Easements, 119 ; Overdeer v. Updegraff, 69 Pa. 110 ; Zell v. The Society, 119 Pa. 390 ; Pierce v. Cleland, 133 Pa. 189 ; Geible v. Smith, 146 Pa. 276.

The plaintiff, therefore, bought subject to the easement then notorious, and at a price regulated by the depreciation caused by the servitude.    The entry and appropriation gave title from that instant, the compensation to be ascertained according to the statute and paid to the then owner, Boyd : Beale v. R. R., 86 Pa. 509 ; McFadden v. Johnson, 72 Pa. 335 ; Warrell v. Railroad, 130 Pa. 600 ; Lawrence's Appeal, 78 Pa. 365 ; Davis v. Railroad, 114 Pa. 308.

We repeat that the assessment of damages, which alone remained to perfect title to the easement, did not defeat nor affect the plaintiff's rights : Oliver v. Railway Co., 131 Pa. 408; Davis v. Railroad Co., 114 Pa. 308.

The entry and appropriation is the sole question : Davis v. Railroad, 114 Pa. 308; Neal v. Railroad, 2 Grant, 137; Lawrence's Appeal, 78 Pa. 365.

The title of the water company vested in it at least provisionally upon its entry in 1878. The damages caused by such entry as well as all damages which ensue by its subsequent construction and use vested eo instanti in the owner, Mr. Boyd. His right thereto was vested, personal and complete. Waiving the trespass did not waive his right to collect damages, under the statutory direction, and in this proceeding he would be entitled to all damages, past, present and future, which such entry, appropriation and use of his property would necessarily cause ; all the damages which must naturally result. While his right to compensation was thus finally affirmed and fixed, his land would be thereby fixed and burdened with the easement, and his conveyance made subsequently, would be, of course, subject to the easement for which he was entitled to compensation : Wadhams v. Railroad Co., 42 Pa. 303; Neal v. Railroad Co., 2 Grant, 137; Heise v. Railroad Co., 62 Pa. 67; Harrington v. Commissioners, 39 Mass. 263; Railroad Co. v. Ward, 9 Ind. 123; Williamsport v. Railroad Co., 141 Pa. 407; Johnston v. Callery, 173 Pa. 129.

Location, appropriation, or taking under the right of eminent domain, no matter how if actual, fixes the corporation absolutely for all damages to which the landowner is, or may become entitled to, by the subsequent acts of the corporation, and as to third parties, the title which is thus acquired, is absolute and complete ; nothing remains to be done except to pay, and as to that none but the owner has any interest. A conveyance subsequent is subject to the easement thus acquired, and a purchaser cannot claim damages : Williamsport Co. v. R. R., 141 Pa. 407.

Although a recovery was permitted in the case of Oliver v. Railway Co., 131 Pa. 408, by one who purchased—or stood in the position of one who purchased—after the entry of the railway company, yet that case, taken in connection with the cases

of R. R. Co. v. Warrell, 122 Pa. 613, and Warrell v. R. R., 130 Pa. 600, is no authority for the position that the subsequent purchaser is entitled to sue for and recover damages.

The measure of damages, whether recovered by action of trespass or by the usual proceeding before viewers, for land or other property taken by right of eminent domain, is well settled : Railroad Co. v. Eby, 107 Pa. 166 ; Miller v. Water Co., 148 Pa. 429 ; Oliver v. Railroad Co., 131 Pa. 408.

The right of a riparian owner to the water flowing through his land for manufacturing purposes is qualified ; his right for domestic purposes is absolute : Clark v. R. R., 145 Pa. 438 ; R. R. v. Miller, 112 Pa. 34 ; Wheatley v. Chrisman, 24 Pa. 298.

The rights of the public—as of a city on the banks of a navigable stream—in the public waters are, for domestic purposes, superior to the rights of the public for purposes of navigation ; but the navigable rights are superior to the manufacturing rights : Phila. v. Collins, 68 Pa. 106 ; Phila. v. Gilmartin, 71 Pa. 140 ; Gallagher v. Phila., 4 Pa. Superior Ct. 60.

The rivers of the state are becoming crowded with establishments requiring water for artificial purposes. Above them towns and cities for many years have been drawing from the streams without thought of owners below, that their rights have been infringed. Do the new uses of the lands below raise claims for damages which did not exist before ?

A proper assessment for damages in this case would be to find the damage done to the land by the appropriation, by finding the differences in value before and after the entry and allow interest on that sum for the time covered by the trespass ; this under the ruling in Penna. R. Co.'s App., 125 Pa. 189.

No part of the property of the plaintiff company adjoined the stream except the twelve acres, and as to that alone the plaintiff was a riparian owner when defendant company appropriated the stream. To this twelve acres other separate property cannot be attached and then damages recovered for the whole : Lawrence v. Phila., 154 Pa. 20 ; Penna. Co. v. R. R., 151 Pa. 334.

If the jury found that the glass works could not be carried on upon the twelve acres alone, and the plaintiff company had no use for water upon the twelve acres detached from their other land, the verdict should have been merely for nominal damages.

*J. M. Galbreath* and *Clarence Walker*, for appellee.—The water company, in its relation to the glass company, is simply an upper riparian owner. This relation can only be changed, as to any lower riparian owner by proper condemnation proceedings, involving compensation first made or secured, as required by constitutional and statutory provision. A water company in the case just cited, and cases like it, is a trespasser in its diversion of the waters of the stream.

The same principle is clearly enunciated in the case of Water Company v. Yoder, 112 Pa. 136, and Hogg v. Water Company, 168 Pa. 456.

The rule as to the measure of damages in the present case is very clearly indicated in the case of Hogg v. The Connellsville Water Co., 168 Pa. 456.

The question of the extent to which the plaintiff is entitled to use the waters of the Connoquenessing creek for its own manufacturing purposes is one which in no way concerns the defendant. So far as the water company is concerned, being, as has been shown, in its relation to the glass company, simply an upper riparian owner, its rights are to use the waters of the stream, and, with only such diminution as is incidental to the exercise of its strictly riparian rights, pass along the whole volume of water to the next lower riparian owner. What use may be made of the water or to what extent used by such lower riparian owner is a matter which concerns only himself and those who have riparian rights further down the stream. Upper riparian owners cannot complain if he consumes it all.

OPINION BY RICE, P. J., October 18, 1897 :

This is an appeal from a judgment in favor of the plaintiff, in an action of trespass brought to recover damages for the injury to it, as a lower riparian owner, by the diversion of the waters of Connoquenessing creek by the defendant company, in the years 1894 and 1895.

The defendant company was incorporated in 1877, under the provisions of the general corporation law of 1874, for the purpose of supplying the borough of Butler with water. In the following year the company built a dam across Connoquenessing creek, from which water is pumped to a reservoir, and thence conducted by pipes to the inhabitants of the borough. It does

not distinctly appear in the testimony how much land the defendant company owns or by what title it is held. We assume, however, that it owns the land where its dam was built, and also the land occupied by its pumping station and reservoir. There is no presumption that it owns any other land. Nor is there any evidence that it ever acquired or attempted to acquire the right to divert the water of the creek by condemnation proceedings or by grant. But it is fairly to be inferred that Boyd, the then owner of the land now owned and occupied by the plaintiff, knew of the erection of the dam, and, so far as appears in the testimony, he did not protest against the same. Neither does it appear he consented.

The plaintiff company was chartered in 1887, for the purpose of manufacturing, selling and dealing in glass, and in the same year purchased of one owner a lot of twelve acres on Connoquenessing creek about a mile below the dam of the water company, and of another owner other lots contiguous to the twelve acre lot.

Upon the land thus purchased—partly on the twelve acre lot and partly on the other lots—the company, at very great expense, erected large plate glass works. It also leased an adjoining piece of ground upon the creek, upon which it erected pumps and tanks for the purpose of supplying its works with water pumped from the creek.

All of the lots purchased by the plaintiff company were at one time parts of the farm of William S. Boyd. In 1872 or 1873, Boyd laid off his farm into town lots and, as thus plotted, the twelve acre piece alone bordered on the stream.

The plaintiff company required and used a large amount of water in washing, polishing and grinding glass, and to make steam to run the machinery of its works. According to the testimony it returned to the stream all but about one tenth of the water thus taken and used. For several years it obtained from the creek a sufficient supply for its purposes, but in the drought in the summer of 1894, it became necessary for the water company to take all of the water of the creek in order to supply its customers. As a consequence, the plaintiff company was deprived of the natural flow of the water of the stream to and by its land, and was compelled to open up the pools between its land and the defendant's dam, and also to obtain water elsewhere to operate its works.

This, in a general way, is a sufficient statement of the facts necessary to an understanding of the legal questions raised by the assignments of error. For the purposes of this discussion we need not refer to the evidence concerning the diversion of the water of Bonniebrook creek.

In his general charge as well as in his answers to the plaintiff's points, the learned judge instructed the jury, that the measure of damages was the expense that the plaintiff was necessarily put to, during the years in question, in order to supply water to take the place of the water that would have flowed to its land if it had not been diverted by the defendant.

The defendant's counsel contend for three propositions, which we shall consider in the following order:

First. After the entry upon the stream, by the defendant company, the plaintiff company could not attach property not entitled to riparian rights to other property entitled to riparian rights, and then claim damages for injury done to the property as a whole, but should be confined to the injury done to the property entitled to riparian rights when it was purchased.

Second. The right of action for the diversion of the stream was in Boyd, the owner of the land bordering on the stream at the time of entry thereon of the defendant company, and hence the plaintiff was not entitled to recover.

Third. If the plaintiff company had a right of action against the defendant company the damages recoverable were limited to the injury done to the land as it was at the time of the entry on the stream by the defendant company, and the plaintiff company had no right after that entry, and with notice of it, to devote the land to a new use requiring a large amount of water for artificial purposes, and then charge the defendant company for loss arising from the want of water for such extraordinary use, unless the defendant company took more water than was reasonably necessary to supply the town.

I. It is to be observed that the cause of action is the injury suffered by the plaintiff in consequence of the diversion of the water of the stream in the years 1894 and 1895. Assuming that the plaintiff had a right of action therefor, the question whether the whole property occupied by its works was riparian is to be determined by its condition at the time of the unlawful diversion of the water complained of, and not by the condition,

at some former time, of the title to the several contiguous lots comprised in the property. At the time of the alleged injury it was one undivided property, both in title and in use, and we see no reason to doubt that riparian rights followed and were connected with such undivided ownership and use as fully and effectually as before the farm was plotted into lots. If the back lots lost their riparian rights when they were severed in title, such rights re-attached when the lots again became reunited in title, possession and use with the contiguous lots fronting on the stream, and thereafter so far as riparian rights were concerned, the property was to be treated as a unit. See Potts v. R. R. Co., 119 Pa. 285; Chester v. Eyre, 181 Pa. 642.

II. It is not, and could not be successfully claimed that the defendant company had a right, as an upper riparian owner merely, to divert the water to the extent that it did, even for the purpose of supplying the inhabitants of Butler with water for domestic use. Ownership of the land does not include ownership of the water which flows over or past it. The right which the owner has is to the use of it in common with the other owners as an incident to the land. For many purposes connected with the enjoyment of the land to which the right is incident (for example, for domestic use and for watering cattle) the riparian owner may divert, detain and even consume the water without regard to the effect which such use may have, in case of deficiency, upon proprietors lower down the stream. But he has not in all respects an equal right thus to divert, detain or consume the water for purposes, which, although the same in kind, are in no way connected with the use of the land. In Haupt's Appeal, 125 Pa. 211, it appeared that a borough bought a tract of land through which a creek flowed, constructed a reservoir on the tract, and conveyed the water therefrom several miles to the borough for the use of its inhabitants. Speaking of the borough's riparian rights, the court said: " If the authority of the plaintiff were measured by its rights as a riparian owner, it would be slender enough. It might indeed use the water for the domestic purposes incident to the said ten acres. If there was a tenant thereon he could use it for watering his stock and for household purposes; for any useful necessary and proper purpose incident to the land itself, and essential to its enjoyment. But that the rights of a riparian owner would

justify the plaintiff in carrying the water for miles out of its channel to supply the borough of Ashland with water is a proposition so palpably erroneous that it would be a waste of time to discuss it." The same language was quoted with approval in defining the rights—as a riparian owner merely—of a water company incorporated under the act of 1874: Lord v. Water Co., 135 Pa. 122.

A diversion in the mode described in the testimony is generally regarded as a continuing injury, and is not referable to the day when first commenced, but successive actions may be brought as long as it is continued. "The general rule is that successive actions may be brought as long as the obstruction is maintained. A verdict in the first instance establishes the plaintiff's right. Subsequent actions are to recover damages for a continuance of the obstruction. . . . For a continued obstruction to the flow of water he could sustain successive actions. In each he could recover the damages he had sustained subsequently to the last preceding action:" Bare v. Hoffman, 79 Pa. 71. See also Wheatley v. Chrisman, 24 Pa. 298; McCoy v. Danley, 20 Pa. 85; Fell v. Bennett, 110 Pa. 181; Clark v. R. R. Co., 145 Pa. 438. So, applying the general principle that successive actions will lie for a continuing trespass or nuisance, not necessarily permanent, the purchaser of an estate upon a stream from which others have unreasonably diverted the water is entitled to recover if such diversion is continued: Gould on Water, par. 215; Angell on Water Courses, par. 399; Atlanta Mills v. Mason, 120 Mass. 244; Chapman v. Copeland, 55 Miss. 476. Whether a different rule would apply where the wrongdoer had permanently changed the course of the stream by turning it away from the lower proprietors is a question we need not discuss. When the plaintiff bought there had been no such diversion of the stream.

How is the case affected by the fact that the defendant company is invested with the right of eminent domain? If we correctly understand the defendant's position it is this: that when it erected its dam across the creek, built its reservoir, laid its pipes and commenced to pump water to supply the inhabitants of Butler, it must be deemed in law to have exercised its right of eminent domain by the appropriation, for all time, of so much of the water of the creek as might at any time be necessary for

its purposes.; that the right to recover damages or compensation for the permanent injury to the land in question caused by such appropriation was in Boyd, who then owned the land, and that the plaintiff took title subject to the right of the defendant to take all of the water if necessary for its purposes. In support of this position the counsel cite certain decisions in railroad cases, amongst which may be mentioned Neal v. R. R. Co., 2 Gr. 137, Wadhams v. L. & B. R. R. Co., 42 Pa. 303, Heise v. Penna. R. Co., 62 Pa. 67, Lawrence's Appeal, 78 Pa. 365, Beale v. Penna. R. Co., 86 Pa. 509, Davis v. Titusville, etc., Railway Co., 114 Pa. 308, O'Brien v. R. R. Co., 119 Pa. 184, Williamsport R. Co. v. R. R. Co., 141 Pa. 407, Graham v. R. R. Co., 145 Pa. 504, and Johnston v. Callery, 173 Pa. 129. These cases decide that where a railroad company enters upon land and builds a railroad across it with the knowledge, and without objection on the part, of the owner, or surveys the route of a railroad and marks it upon the ground, and then, by appropriate action of the board of directors, adopts the same as and for the location of the proposed railroad, this is an appropriation of the land for the purposes of the railroad, and vests the right to damages in the owner of the land. The appropriation being permanent and continuing in its nature, the injury to the landowner is of like nature; therefore a single recovery can be had for all the damages which may be caused by the location and by the subsequent construction of the railroad. The same principles governed in our own case of Hankey v. Phila. Co., 5 Pa. Superior Ct. 148. The right to the damages for such appropriation is a personal claim belonging to the owner of the land when the entry and injury takes place, and does not run with the land: McFadden v. Johnson, 72 Pa. 335. But it is to be observed— and this is shown very clearly in the cases above cited—that the appropriation of land for the purposes of a railroad is evidenced by unequivocal acts, which leave no doubt of the determination of the company to fasten upon the land a permanent and continuing servitude. And although the title of the company does not become complete until it has made or secured compensation to the owner, yet no harm can ordinarily ensue to any one by holding that a purchaser of the land with notice of such appropriation takes subject to the right of the company to perfect its title by making or securing compensation to him who was the owner of the land at the time the appropriation was made.

But upon what principle must the acts of the defendant company in 1878 be deemed, in law, an appropriation, in the exercise of the right of eminent domain, of all of the water of the creek for all time, in the absence of unequivocal evidence of such intention on its part? True, the company was empowered by the statute under which it was chartered to appropriate so much of the water from the creek as might be necessary for its purposes, upon compliance with the conditions imposed by the statute and the constitution. But what evidence is there, and what notice had the lower riparian owner, that it intended to exercise this right, or indeed that it intended to make a permanent appropriation of the stream without right? The offer to show that proceedings were begun by upper riparian owners for the assessment of damages caused to them by backing up the water, and that these were settled by a purchase of their property, was wholly irrelevant to the present issue and was properly rejected. To say nothing of the fact that neither the plaintiff nor its predecessor in title was a party to the proceedings, or was affected with notice of them, the evidence would not show or tend to show an appropriation of the stream by the defendant company in the exercise of its right of eminent domain. There was no resolution of the board of directors appropriating the stream; no offer to agree with the lower owners or tender of security was made; the company made no entry upon their lands; and there was no such physical occupation of the stream itself as indicated any certain intention to continue the diversion of the water permanently, or to take such quantity as would work substantial damage to lower riparian owners; much less that it would at some future time take all of the water. As the defendant company did not for several years take water from the creek in such quantities as to interfere materially with the use of the water by the lower riparian owner, even for manufacturing purposes, he might well refrain from legal proceedings, without estopping himself or his successor in title from maintaining an action when actual damage was done. Let us suppose that, when the company first began to pump water from the creek, Mr. Boyd had brought an action on the case, and had demanded damages measured by the difference in the market value of his farm with the right to the flowing stream and without it, according to the rule laid down in Miller

v. Windsor Water Co., 148 Pa. 429, might not the defendant company have successfully answered, that there was no evidence of a permanent injury to his farm because there was no evidence of a permanent appropriation of the water? We find nothing in the evidence before us which would have prevented the company from making such answer, and from insisting that the true measure of damages in such a case was the loss that Mr. Boyd might have sustained by the diversion of the stream up to the time of bringing suit, in accordance with the rule laid down in Bare v. Hoffman, supra, Clark v. R. R. Co., 145 Pa. 438, and kindred cases. As was said in the last cited case, the company was of course at all times liable to an action in vindication of the lower owners' right, but not for the recovery of actual damages until actual injury was done. It now suits the purposes of the company to claim that there was a permanent appropriation of the creek in 1878, and that the owner of the land at that time might have proceeded to have his damages assessed in the mode prescribed by the act of 1874 ; but it is by no means certain that it would have taken that position if suit had been brought at that time or would have been compelled to. Nor is it clear that a right of action to recover damages for a permanent appropriation was substituted for the lower owners' right to have the stream which washed his land flow as it was wont by nature without material diminution or alteration.

In Penna. R. Co. v. Miller, 112 Pa. 34, the company owned the land in fee through which a stream flowed, and took water from the stream at a point on its own land for the purpose of supplying its locomotives. The plaintiff alleged, that the quantity taken was so large as to seriously impair the power of his mill, and brought an action on the case, in which he recovered. The defendant contended, that by virtue of the act of 1857, the company had the right to take the water from the creek for the improvement and operation of its railroad, and if in taking such water the plaintiff had suffered any damages, his remedy was to have them assessed by a jury of view in accordance with the provisions of the act, and an action on the case could not be maintained. The Supreme Court, PAXSON, J., delivering the opinion, disposed of this contention in this way: " We do not regard this point as tenable, for the reason that the water was not taken by the company under the right of

eminent domain, but by virtue of its rights as a riparian owner. . . . As before observed the railroad company may use this water by virtue of its rights as riparian owner, but such use must be such as not sensibly to diminish the stream to the riparian owner below. The water belongs to both, and if the the former wants more than its share it must take it under its right of eminent domain and pay for it."

A similar question arose in Lord v. Meadville Water Co., 135 Pa. 122, where it was held that a water company, by the mere purchase of land upon which a spring issues, creating a stream which flows in a natural channel through the land of others, does not acquire a right to divert the water of such spring into another channel without first paying or securing compensation to lower riparian owners; the rights of the company in such a case are those of a riparian owner, neither more nor less. The pertinency of these two cases consists in this, that in respect of their liability to action for diverting the water the defendants were treated as ordinary riparian owners, although it was conceded that they were invested with the right of eminent domain. " The company might have taken the spring under its right of eminent domain, if it possessed such right; for aught that appears, it may do so still, and after having done so and made compensation to the riparian owners who are injured thereby, it will be free from suits of this nature. Had it done so in this instance it would not have had this judgment against it:" Lord v. Water Co., supra.

It is worthy of notice that the recovery in the foregoing case was not for a permanent injury to the plaintiff's freehold, but for damages suffered by him in consequence of being deprived of the water for a certain specified period prior to bringing suit. It is true that the question of the measure of damages was not discussed, but the reasoning of the opinion is entirely inconsistent with the theory, that there was such a permanent appropriation of the stream under the right of eminent domain as would prevent recovery in successive suits, so long as the unlawful diversion might be continued, or as often as it might be repeated prior to making compensation or giving security therefor.

A water company invested with the right of eminent domain entered upon land for the purpose of constructing a reservoir,

and cut down and removed the timber. The owner brought an action of trespass quare clausum fregit, and about the same time the company filed a bond for such damages as he might be entitled to for the entering upon and taking the land. Viewers were appointed and the damages assessed. Upon the trial of the action of trespass the defendant offered to show that upon the hearing before the viewers the plaintiff offered to submit, and did submit, the question of the value of the timber cut, and that damages therefor were claimed and allowed. The rejection of this evidence was held to be error, but it was distinctly conceded by the court that the defendant was a trespasser and was liable as such, in entering upon the land and cutting the timber without making compensation or tendering bond. " In the action of trespass the plaintiffs were entitled to recover for the unlawful entry, and for any damages to the property down to the filing and approval of the bond; in the proceeding before the viewers they were entitled to recover the value of the property taken as in other cases where the land is appropriated by a corporation under the right of eminent domain : " Bethlehem Water Co. v. Yoder, 112 Pa. 136.

Riparian rights are incident to the ownership of the banks of the watercourse. They run with the land. They may be granted away or be extinguished by condemnation proceedings or by prescription, but cannot be defeated by simple appropriation. The opinion expressed in some early cases that a riparian owner may acquire exclusive rights to running water by prior occupancy has not been sustained by later decisions, and except in those states where the common law has been modified by statute or local usage, the great weight of authority is to the effect that mere prior appropriation or occupancy unless continued for a period of time, and under such circumstances as would be requisite to establish rights by prescription, confers no exclusive rights. See 4 Am. & Eng. Ency. of Law, 984, and cases there cited : Gould on Waters, par. 226. This is the doctrine of our own cases. " If a thing be common there may be an appropriation by general consent or grant. Mere priority of appropriation of running water, without such consent or grant, confers no exclusive right. It is not like the case of mere occupancy where the first occupant takes by force of his priority of occupancy. That supposes no ownership already existing,

and no right to the use already acquired. But our law annexes to the riparian proprietors the right to the use in common, as an incident to the land ; and whoever seeks to found an exclusive use must establish a rightful appropriation in some manner known and admitted by the law:" Hoy v. Sterrett, 2 W. 327.

It cannot be contended that the former owner of the land in question ever lost or parted with these rights, except when he parted with the title to the land, or estopped himself from asserting them in a court of law. When the title to the land passed, the incidental riparian rights passed with it. If the defendant company has not acquired the right to divert the water—to prevent the natural flow to and past the plaintiff's land—the fact that it might have acquired it by making compensation or tendering security, or may still do so, does not affect the question of its liability to action for injuries to the party whose right was infringed. The plaintiff and the defendant, under the facts of the case, have the rights in the stream of riparian owners only. It follows that the former may maintain an action to recover such actual and special damages as it sustained in consequence of the detention and diversion of the water in 1894 and 1895, notwithstanding its predecessor in title had a right of action in which he could have recovered nominal damages for the infringement of his right to the natural flow of the water during his ownership.

III. The reasoning by which the foregoing conclusions are reached is as inconsistent with the defendant's third proposition as with the other two. To hold that the plaintiff may recover damages in respect of the use of the land for agricultural purposes and in respect of that use only would be to hold that in some way, not clearly explained, the defendant has acquired the right, as against the plaintiff, to take all of the water not required by the latter for such purposes, and to the extent, only, that it was required in 1878. This middle ground is no more tenable than the position that the defendant has the right as against the plaintiff, to take all the water, if necessary, to supply its customers, without regard to the effect of such taking upon the use of the lower owners' land for any purpose. Of the two the latter is the more logical position. Neither can be sustained by sound principle or authority. Both are virtually based on the assumption that the plain-

tiff purchased with notice of a prior permanent appropriation of the stream, for which but a single action to recover all damages, present and prospective, would lie; which assumption, as we have seen, is not warranted by the facts or the law. But if when the plaintiff purchased, the defendant had the rights of a riparian owner only, and if its acts in 1878, did not amount to · a "taking" of the stream—a permanent appropriation of so much of the water thereof as it might at any future time find necessary to supply its customers—then the plaintiff had a right to devote its land to any lawful purpose for which a riparian owner may rightfully use the water of a flowing stream, and could recover damages for the deprivation of the water for such use by the wrongful act of the defendant. A lower proprietor cannot recover special damages on the ground that the diversion of the water interfered with the water power on his land, when during the period of time covered by his action he had no mill or other means of applying or using the water power, made no attempt to use it, and gave no notice to the defendant of any purpose so to do; but if he erects a mill, or leases the site to some other person for that purpose, the defendant must cease the diversion of the water or be subject to a claim for special damages : Clark v. Railroad Co., 145 Pa. 438.

It is well settled that a riparian owner has the right to the use of the stream as an incident to the land for ordinary purposes, and also for certain purposes which are called extraordinary, provided in such extraordinary use he does not materially diminish its quantity or impair its quality : Wheatley v. Chrisman, 24 Pa. 298. The use which the plaintiff made of the water was extraordinary but not necessarily unreasonable and wrongful. Whether it was so or not depends not alone on the necessities of the business it conducted, it is true (Wheatley v. Chrisman, supra), nor, on the other hand does the law lay down any fixed and invariable rule as to the number of gallons that the riparian owner may consume in his manufacturing enterprise, without making himself liable to a lower owner. The question is, whether his use of the stream is reasonable and appropriate to the size of the stream and the quantity of water usually flowing therein : Gould on Waters, par. 208. The reasonableness of the use of water by a riparian owner must depend upon the circumstances of each particular case, and of

course the size and capacity of the stream rightly enter into the inquiry: Miller v. Miller, 9 Pa. 74 ; Clark v. Railroad Co., 145 Pa. 438. The plaintiff actually consumed but a comparatively small part of the water that it took; all the rest was returned to the stream. · In the absence of evidence that the taking of such quantity from the stream in. its natural state would materially and sensibly diminish its volume, to the actual damage of lower riparian owners, the defendant is not in a position to deny the right of the plaintiff to use the water for manufacturing purposes and to recover such damages as it has sustained in respect of such use.

·The rule as to the measure of damages applicable to the facts of the case, as stated by the learned trial judge, is fully sustained by Hogg v. Connellsville Water Co., 168 Pa. 456,—a case strikingly similar to the present in many essential facts. See also Hart v. Evans, 8 Pa. 13.

Judgment affirmed.